The **PUBLIC SERVICE COMMISSION OF KENTUCKY, Appellant,**

v.

**COMMONWEALTH of Kentucky, and Duke Energy Kentucky, Inc., f/k/a The Union Light, Heat and Power Company, Appellees.**

and

**Kentucky Cabinet for Economic Development, Real Party in Interest.**

**The Union Light, Heat and Power Company (n/k/a Duke Energy Kentucky, Inc.), Appellant,**

v.

**Commonwealth of Kentucky, and The Public Service Commission of Kentucky, Appellees.**

and

**Atmos Energy Corporation, et al., Real Parties in Interest.**

Nos. 2008–SC–000483–DG, 2008–SC–000489–DG.

Supreme Court of Kentucky.

Aug. 26, 2010.

David Shawn Samford, Richard G. Raff, Gerald Edward Wuetcher, Frankfort, KY, for Appellant/Appellee, The Public Service Commission of Kentucky.

Sheryl G. Snyder, M. Holliday Hopkins, Jason Patrick Renzelmann, Frost Brown Todd, LLC, Louisville, KY, for Duke Energy Kentucky, Inc., f/k/a The Union Light, Heat and Power Company, The Union Light, Heat and Power Company, n/k/a Duke Energy Kentucky, Inc.

Jack Conway, Attorney General, David Edward Spenard, Assistant Attorney General, Office of Rate Intervention, Frankfort, KY, for Appellee, Commonwealth of Kentucky.

Catherine C. Staib, Holland B. Spade, Janine Rene' Coy–Geeslin, Cabinet for Economic Development, Frankfort, KY, for Amicus Curiae, Kentucky Cabinet for Economic Development.

Kendrick Riggs, Deborah Tully Eversole, William Duncan Crosby, III, Stoll Keenon Ogden PLLC, Allyson Kay Sturgeon, E. On U.S. LLC, Louisville, KY, for Amicus Curiae, Atmos Energy Corporation; Big Rivers Electric Corporation; Columbia Gas of Kentucky, Inc.; Delta Natural Gas Company; East Kentucky Power Cooperative; Jackson Energy Cooperative Corporation; Kenergy Corporation; Kentucky Association of Electric Cooperatives, Inc.; Kentucky Rural Water Association, Inc.; Kentucky Utilities Company; Louisville Gas and Electric Company; Taylor County Rural Electric Cooperative Corporation.

John Newton Hughes, Frankfort, KY, Mark R. Hutchinson, Wilson, Hutchinson & Poteat, Owensboro, KY, for Amicus Curiae, Atmos Energy Corporation.

James M. Miller, Sullivan, Mountjoy, Stainback & Miller, PSC, Owensboro, KY, for Amicus Curiae, Big Rivers Electric Corporation.

Richard S. Taylor, Frankfort, KY, for Amicus Curiae, Columbia Gas of Kentucky, Inc.

Robert M. Watt, III, Stoll Keenon Ogden PLLC, Lexington, KY, for Amicus Curiae, Delta Natural Gas Company.

Roger R. Cowden, Lexington, KY, David Arthur Smart, Winchester, KY, for Amicus Curiae, East Kentucky Power Cooperative.

Clayton Otis Oswald, Taylor, Keller, Dunaway & Tooms, PLLC, London, KY, for Amicus Curiae, Jackson Energy Cooperative Corporation.

Frank N. King, Jr., Dorsey, King, Gray, Norment & Hopgood, Henderson, KY, for Amicus Curiae, Kenergy Corporation.

Daniel T. Yates, Governmental Affairs and Member Counsel, Kentucky Association of Electric Cooperative, Inc., Louisville, KY, for Amicus Curiae, Kentucky Association of Electric Cooperatives, Inc.

Damon R. Talley, Hodgenville, KY, for Amicus Curiae, Kentucky Rural Water Association, Inc.

Robert M. Spragens, Jr., Spragens & Higdon, PSC, Lebanon, KY, for Amicus Curiae, Taylor County Rural Electric Cooperative Corporation.

Opinion of the Court by Justice ABRAMSON.

For over twenty years, the Kentucky Public Service Commission (PSC) has allowed utilities operating in Kentucky to offer economic development rates (EDRs) to qualifying customers. These reduced gas and electric rates, as the name implies, are intended to promote economic development by encouraging both existing and potential commercial and industrial customers to invest capital in the Commonwealth, thereby creating jobs and stimulating Kentucky's economy. In recent years, EDRs have been implemented by a utility company negotiating a contract with a qualifying customer and then submitting that contract to the PSC for its approval.

In the mid–2000s, The Union Light, Heat and Power Company n/k/a Duke Energy Kentucky, Inc., determined that it was at an economic disadvantage when competing for large commercial and industrial customers with utilities in several surrounding states because in those jurisdictions similarly discounted rates were included in the various utilities' posted tariffs. While Duke Energy Kentucky could offer competitive EDRs, that fact was not

readily apparent from its publicly-filed tariff. To address this situation, Duke Energy Kentucky initiated a proceeding before the PSC in June 2004, seeking to include two general EDR rates as "riders" to its general schedule of rates. The PSC eventually approved two EDR riders which essentially allow Duke Energy Kentucky to make a standing offer to qualifying customers but, as always, the EDR customer must still enter into an individual contract with Duke Energy Kentucky which the PSC must then approve before the parties go forward.

The Kentucky Attorney General intervened in the PSC proceeding initiated by Duke Energy Kentucky to challenge the proposed EDR riders. He alleged that EDRs are unlawful under Kentucky Revised Statute (KRS) 278.170 because the recipients of the reduced rates are not authorized to receive reduced rate service and, further, that they are unlawful under KRS 278.030 and .170 because the classifications employed and the resulting rates are unjust and unreasonable. After the PSC approved Duke Energy Kentucky's EDR riders, the Attorney General appealed to Franklin Circuit Court. The circuit court examined the relevant provisions of KRS Chapter 278, determined that the EDR riders are lawful and reasonable, and then affirmed the PSC. On appeal, the Court of Appeals reversed, having concluded that reduced rates are not available in Kentucky to any class of utility customer not specifically identified in KRS 278.170(2) and (3). This Court granted discretionary review at the request of both the PSC and Duke Energy Kentucky and, having carefully reviewed controlling statutes and longstanding administrative construction of those statutes by the PSC, reverses.

### RELEVANT FACTS

The PSC first recognized an EDR in a 1988 case involving the Louisville Gas and Electric Company. *See In the Matter of: Adjustment of Gas and Electric Rates of Louisville Gas and Electric Company,* PSC Case No. 10064 (Ky. PSC July 1, 1988). Shortly thereafter, the PSC initiated its own investigation regarding the implementation of EDRs by gas and electric utilities generally, focusing particularly on the feasibility, design and implementation of these special rates. Various gas and electric utilities operating in the Commonwealth were made parties to the proceeding and several other parties, including the Kentucky Attorney General, were allowed to intervene. The PSC conducted a June 22, 1989 hearing which included testimony, then considered post-hearing briefs and ultimately issued a detailed 29-page order which outlined the ground rules for the use of EDRs in Kentucky. *See In the Matter of: An Investigation into the Implementation of Economic Development Rates by Electric and Gas Utilities,* Admin. Case No. 327 (Ky. PSC Sept. 24, 1990). The PSC concluded that EDRs would "provide important incentives to new large commercial and industrial customers to locate facilities in Kentucky and to existing large commercial and industrial customers to expand their operations, thereby bringing much needed jobs and capital investment into Kentucky." *Id.* at p. 25. The 1990 Order provided the foundation for the use of EDRs by utilities over the ensuing years and apparently provoked no real controversy until the Attorney General intervened in the 2004 proceeding initiated by Duke Energy Kentucky.

The EDR riders proposed by Duke Energy Kentucky are twofold: (1) a Development Incentive Rider which includes an Economic Development Program and an Urban Redevelopment Program and (2) a Brownfield Redevelopment Rider. The

Economic Development Program is available to a qualifying customer which employs a minimum of 25 full-time employees and makes a capital investment of $1 million per 1000 kW of new load while the Urban Redevelopment Program is applicable to a customer with a minimum load of 500 kW which locates in a building, 25,000 square feet or larger, that has been unoccupied for at least two years. Customers qualifying for these programs in the Development Incentive Rider receive discounted service for up to twelve months but are obligated to continue service for at least two years following the expiration of the incentive period. The Brownfield Redevelopment Rider applies to customers who locate in an area that qualifies as a brownfield site [1] under state or federal law and provides for a declining percentage reduction in their demand charge for up to five years but, again, the customer must continue taking service after the incentive period expires, in this case for at least three years.

The Attorney General argued before the PSC that the only customers eligible for reduced utility rates are those specifically identified in KRS 278.170(2) and (3). Those subsections allow preferential rates to active, retired or disabled utility officers and employees; the United States; charitable institutions and persons engaged in charitable work; customers affected by disasters such as a flood or epidemic; and governmental units or fire protection districts engaged in firefighting and firefighter training. The PSC rejected this argument in its April 19, 2005 Order, noting specifically that a utility is expressly authorized by KRS 278.030(3) to:

> employ in the conduct of its business suitable and reasonable classifications of its service, patrons and rates. The classifications may, in any proper case, take into account the nature of the use, the quality used, the quantity used, the time when used, the purpose for which used, and any other reasonable consideration.

The PSC found nothing illegal or unreasonable about offering reduced rates to customers who satisfy minimum job creation and capital investment levels or to customers willing to locate in abandoned urban properties or brownfields. The PSC found these considerations to fit within the "reasonable consideration" language appearing at the close of KRS 278.030(3).

The Franklin Circuit Court deemed the Attorney General's position similarly unpersuasive, citing not only KRS 278.030(3) but also KRS 278.170(1). The latter statute prohibits a utility giving an "unreasonable preference or advantage to any person" or establishing any "unreasonable difference ... between classes of service for doing a like and contemporaneous service under the same or substantially the same conditions." The circuit court concluded that this language allowed for reasonable differences in rates and that the riders in question were not unreasonable in light of the EDR contract restrictions and the voluntary nature of the programs. Consequently, the circuit court affirmed the PSC's order.

The Court of Appeals reversed, as noted, because it read KRS 278.170(2) and (3) as a comprehensive list of all utility customers who can receive any form of preferential rate treatment. In so holding, that court essentially found no legal basis for EDRs or any other type of reduced rate which the Kentucky General Assembly has not specifically legislated. Finding this construction to be contrary to the

---

1. A "brownfield site" is defined in KRS 65.680(4) as "real property, the expansion, redevelopment, or reuse of which may be complicated by the presence or potential presence of a hazardous substance, pollutant, or contaminant."

language of KRS 278.170 as a whole, to other provisions of KRS Chapter 278 and to longstanding administrative interpretation of those statutes, we reverse.

### ANALYSIS

■ The matter before us initially revolves around the proper construction of the statutes which create the PSC and define its responsibilities and powers. Whether the PSC is authorized to approve EDRs is a question of law and this Court, while mindful of the legal conclusions of the lower courts, reviews the matter *de novo. Cumberland Valley Contrs., Inc. v. Bell County Coal Corp.,* 238 S.W.3d 644, 647 (Ky.2007) (statutory construction is matter of law subject to *de novo* review). Because we conclude that KRS Chapter 278 does permit the PSC to authorize EDRs, a second issue to be addressed is whether the Attorney General has established that the specific EDRs proposed by Duke Energy Kentucky are unreasonable. *See* KRS 278.430 (party challenging order must establish by "clear and satisfactory evidence" that the order is "unreasonable or unlawful"). The PSC order approving the EDRs is unreasonable only if the party challenging it establishes that the. order "is not supported by substantial evidence and the evidence leaves no room for a difference of opinion among reasonable minds." *National–Southwire Aluminum Co. v. Big Rivers Elec. Corp.,* 785 S.W.2d 503, 510 (Ky.App.1990). As developed *infra,* we conclude that the Attorney General has not met this burden.

### I. Economic Development Rates Are Allowable Pursuant to KRS Chapter 278

■ The PSC, established to "regulate utilities and enforce the provisions" of KRS Chapter 278, has "exclusive jurisdiction over the regulation of rates and ser-

vices of utilities". KRS 278.040(1) and (2). It is empowered to adopt regulations to implement KRS Chapter 278 and "investigate the methods and practices of utilities to require them to conform to the laws of this state, and to all reasonable rules, regulations and orders of the commission not contrary to law." KRS 278.040(3). This Court has long recognized the expansive reach of the PSC's authority, concluding that jurisdiction is "exclusively and primarily" in the commission to "fix rates [and] establish reasonable regulation of service," subject to the judicial review provided in the statute. *Smith v. Southern Bell Telephone & Telegraph Co.,* 268 Ky. 421, 104 S.W.2d 961, 963 (1937). While the PSC is a "creature of statute" and has only those powers granted by the General Assembly, it has "such powers as are conferred expressly or by necessity or fair implication." *Boone County Water and Sewer Dist. v. PSC,* 949 S.W.2d 588, 591 (Ky.1997). With these general principles in mind, we turn to the relevant provisions of KRS Chapter 278.

Two statutes are of particular significance in resolving whether the PSC may condone the EDRs sought by Duke Energy Kentucky. First, KRS 278.030(1) recognizes the general principle that utility rates must be "fair, just and reasonable", but then qualifies this general principle with express recognition of the fact that "fair, just and reasonable" is not inconsistent with appropriate classifications that distinguish among customers, service and rates. Thus, as noted above, subsection (3) of KRS 278.030 provides:

Every utility may employ in the conduct of its business suitable and reasonable classifications of its service, patrons and rates. The classifications may, in any proper case, take into account the nature of the use, the quality used, the quantity used, the time when used, the

purpose for which used, and any other reasonable consideration.

The second relevant statute, KRS 278.170, is the one upon which the Court of Appeals focused its attention. Because this statute is central to construction of the PSC's authority in this matter, we quote KRS 278.170 in its entirety:

(1) No utility shall, as to rates or service, give any unreasonable preference or advantage to any person or subject any person to any unreasonable prejudice or disadvantage, or establish or maintain any unreasonable difference between localities or between classes of service for doing a like and contemporaneous service under the same or substantially the same conditions.

(2) Any utility may grant free or reduced rate service to its officers, agents, or employees, and may exchange free or reduced rate service with other utilities for the benefit of the officers, agents, and employees of both utilities. Any utility may grant free or reduced rate service to the United States, to charitable and eleemosynary institutions, and to persons engaged in charitable and eleemosynary work, and may grant free or reduced rate service for the purpose of providing relief in case of flood, epidemic, pestilence, or other calamity. The terms "officers" and "employees," as used in this subsection, include furloughed, pensioned, and superannuated officers and employees, and persons who have become disabled or infirm in the service of the utility. Notice must be given to the commission and its agreement obtained for such reduced rate service except in case of an emergency, in which case the commission shall be notified at least five (5) days after the service is rendered.

(3) Upon obtaining commission approval of a tariff setting forth terms and conditions of service the commission deems necessary, a utility as defined in KRS 278.010(3)(d) may grant free or reduced rate service for the purpose of fighting fires or training firefighters to any city, county, urban-county, charter county, fire protection district, or volunteer fire protection district. Any tariff under this section shall require the water user to maintain estimates of the amount of water used for fire protection and training, and to report this water usage to the utility on a regular basis.

(4) The commission may determine any question of fact arising under this section.

■ Focusing on subsections (2) and (3), the Court of Appeals concluded that the legislature had identified "the entities which may receive discounts" and that entities engaged in either economic development or brownfield development were not permissible recipients of reduced utility rates. In that court's view, approval of an EDR would entail the PSC adding to a statute something that the General Assembly, whether deliberately or otherwise, had not included. As both the PSC and Duke Energy Kentucky aptly note, the Court of Appeals first indicated that it was following the "plain language of the statute [KRS 278.170]" but it then invoked, albeit not by name, the principle of statutory construction known by the oft-used Latin maxim *"expressio unius est exclusio alterius"*, *i.e.,* "to express or include one thing implies the exclusion of the other, or of the alternative." *Black's Law Dictionary,* p. 602 (7th ed.1999). As this Court recently stated in *Fox v. Grayson,* 317 S.W.3d 1 (Ky.2010), this canon of statutory construction is resorted to only when the relevant language is ambiguous and "only as an aid in arriving at [legislative] intention, and not to defeat it." *Id.* at 9, *citing Jefferson Co. v. Gray,* 198 Ky. 600, 249 S.W. 771, 772

(1923). Because KRS 278.170 standing alone, and when read in conjunction with KRS 278.030, is not ambiguous, the statutory construction canon of "*expressio unius*" is simply not applicable. The Kentucky General Assembly has used plain language which, logically interpreted, leaves no doubt that while utilities are statutorily entitled to offer reduced rates to the persons and entities identified in KRS 278.170(2) and (3), those utilities may also offer other customers reduced rates subject to PSC approval and compliance with general statutory guidelines regarding reasonableness.

█ Particularly pertinent to our conclusion is the opening subsection of KRS 278.010, a provision which the Court of Appeals essentially "read out" of the statute. KRS 278.170(1) prohibits any "unreasonable preference or advantage", any "unreasonable prejudice or disadvantage" or any "unreasonable difference" for "doing a like and contemporaneous service under the same or substantially the same conditions." The qualifier "unreasonable" clearly points to the conclusion that reasonable distinctions between recipients of utility services, "classes of service" or utility rates are legally appropriate. *See also National–Southwire Aluminum Co.,* 785 S.W.2d at 514 ("Even if some discrimination actually exists, Kentucky law does not prohibit it per se. According to KRS 278.170(1), we only prohibit 'unreasonable prejudice or disadvantage' or an 'unreasonable difference.'"). This logical interpretation is reinforced by KRS 278.030(3), quoted *supra,* which allows a utility to employ "suitable and reasonable classifications of its service, patrons and rates." Both statutes expressly recognize the pro-

priety of a utility drawing distinctions in its rates and making classifications among its customers subject always to the touchstone of reasonableness. The overseer of each utility's compliance with the statutory mandate is the PSC subject, of course, to appropriate judicial review.

The Attorney General counters that subsection (1) of KRS 278.170 simply states the general principle of reasonableness which governs the reduced rates offered to the particular authorized recipients identified in subsections (2) and (3). This constrained construction not only ignores the broad recognition of a utility's right to make "suitable and reasonable classifications" in KRS 278.030(3) but it begs an obvious question: if the General Assembly simply wanted to clarify that the reduced rates available to utility employees, the United States, charitable institutions and others identified in subsections (2) and (3) of the statute must be reasonable, would they not have merely inserted the word "reasonable" in the appropriate places in those two subsections? Subsection (1) of KRS 278.170 has more significance than the constricted meaning which the Attorney General currently advances.[2]

Moreover, the two subsections of KRS 278.170 focused on by the Court of Appeals contain no language which would undermine our conclusion that the PSC may authorize a utility to offer EDRs to qualifying customers. Subsections (2) and (3) identify categories of customers to which a utility "may grant free or reduced rate service" but there is nothing which expressly or impliedly limits reduced rate service to officers, agents or employees of

---

**2.** We note that this statutory interpretation, urged by the Attorney General when it intervened in the 2004 proceeding, differs from the Attorney General's position in the 1990 *Investigation into the Implementation of Economic* *Development Rates,* where the focus was on the issues of reasonableness, implementation and other specifics rather than any question regarding the legality of an EDR under Kentucky law.

the utility, charitable institutions, or any of the other handful of categories of utility users specifically identified. Again, if our General Assembly had intended for those recipients in subsections (2) and (3) to be exclusive, it could have employed limiting language indicating reduced rates are available "only to the following authorized customers" or stating that "no reduced rates shall be offered except as authorized in this statute." No such language of limitation or exclusivity appears.

The most obvious construction of KRS 278.170, again, is that the listed customers in KRS 278.170(2) and (3) may receive reduced utility rates [subject only to the reasonableness standard] but nothing suggests that they, and only they, may be the subject of the "suitable and reasonable classifications of ... rates" specifically provided for in KRS 278.030(3). To conclude otherwise would involve rendering both KRS 278.170(1) and KRS 278.030 largely meaningless. The courts will not interpret a portion of a statute in a way that would render other parts of the same statute or the larger statutory scheme meaningless. *Lewis v. Jackson Energy Cooperative Corporation*, 189 S.W.3d 87 (Ky.2005); *Commonwealth v. Phon*, 17 S.W.3d 106, 108 (Ky.2000). This is precisely the result of any construction which holds that KRS 278.170(2) and (3) reflect the exclusive recipients or circumstances for any distinction or classification in utility rates. Simply stated, EDRs generally are lawful under KRS 278.170(1) and KRS 278.030 and a particular EDR is sustainable provided the PSC determines that the rate is reasonable and that determination withstands the appropriate scrutiny on judicial review.

■■ Before turning to the issue of the reasonableness of Duke Energy Kentucky's EDR riders, we note that our construction of the PSC statutory provisions comports with the interpretation employed by the PSC itself over the last twenty years. If a statute is ambiguous, the courts grant deference to any permissible construction of that statute by the administrative agency charged with implementing it. *See Bd. of Trustees of the Judicial Form Retirement Sys. v. Attorney General*, 132 S.W.3d 770, 786–87 (Ky.2003) *citing Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 844–45, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984). Although we do not find the statutes at issue ambiguous, if we were to construe them as susceptible to more than one meaning then the oft-cited *Chevron* deference principle would apply. The PSC's conclusion that reasonable EDRs are authorized by Kentucky statute has been evident at least since issuance of the 1990 *Investigation into the Implementation of Economic Development Rates* and that administrative construction, which underscores our own reading of KRS 278.030 and KRS 278.170, is entitled to deference. Thus, even if we found ambiguity in KRS 278.170, we still would conclude that EDRs are allowed under Kentucky law.

## II. The Attorney General Has Not Proved That the Duke Energy Kentucky Economic Development Rates Are Unreasonable

Finally, we reach the issue of reasonableness and, more specifically, whether the Attorney General has shown by "clear and satisfactory evidence", KRS 278.430,[3]

**3.** KRS 278.430 provides in its entirety:
In all trials, actions or proceedings arising under the preceding provisions of this chapter or growing out of the commission's exercise of the authority or powers granted to it, the party seeking to set aside any determination, requirement, direction or order of the commission shall have the burden of

that there is not substantial evidence supporting the PSC's determination that the specific Duke Energy Kentucky EDR riders are reasonable. *See National–Southwire Aluminum*, 785 S.W.2d at 510 *citing Energy Regulatory Comm'n v. Ky. Power Co.*, 605 S.W.2d 46 (Ky.App.1980). No effort has been made to shoulder this burden of proof because the Attorney General has rested his case solely' on the legal interpretation of the relevant statutes, insisting that the PSC's "lack of power" to approve EDRs "renders moot any present or prospective issues pertaining to reasonableness...." Even in the circuit court, the Attorney General maintained that the Duke Energy Kentucky EDRs were both "unfair and unreasonable" and "unjust and unreasonable" based on a particular construction of KRS 278.170 which would disallow EDRs altogether as a matter of law (a construction which we have just rejected), rather than on proof that a particular aspect of the challenged EDRs was unjust, unfair or unreasonable. In essence, this case has been a challenge to the legality of EDRs generally as opposed to a challenge to the specifics of the EDRs approved by the PSC. Thus, while reasonableness of the Duke Energy Kentucky EDRs would ordinarily be our next focus, this issue is not properly before us, there being neither evidence of record nor argument contesting the specifics of the Development Incentive Rider or the Brownfield Redevelopment Rider. In short, where the party challenging a PSC order has not attempted to address the dictates of KRS 278.430, that order will stand without further scrutiny by this Court.

## CONCLUSION

The PSC properly construed its enabling statutes, most particularly KRS

proof to show by clear and satisfactory evidence that the determination, requirement,

278.030 and KRS 278.170, as allowing for the use of economic development rates to be offered by utilities to qualifying customers subject to specific approval of those EDRs by the PSC. While utility rates must always be fair, just and reasonable, the Attorney General has raised no issue with the Duke Energy Kentucky EDRs beyond his general challenge to the legality of such reduced rates under any circumstance. Having concluded that EDRs are legally authorized by statute and having no other issue properly before us, we reverse the Court of Appeals opinion in this matter and thereby reinstate the PSC Order approving Duke Energy Kentucky's Development Incentive Rider and Brownfield Redevelopment Rider.

All sitting. All concur.

direction or order is unreasonable or unlawful.