McKee
vs.
Pope.

Case 14.

Rule of Court.

McKee vs. Pope.

APPEAL FROM GARRARD CIRCUIT.

1. Where there is a misjoinder of causes of action in a proceeding under secs. 111, to 114, of the Code of Practice, unless exception be taken for that cause in the circuit court, the court of appeals will regard the irregularity as waived.

2. A petition was brought to recover the amount of a note and foreclose a mortgage given to secure that note, an order made by the court to the sheriff to deliver the mortgaged property, (a slave) to the plaintiff, unless bond was given for the delivery, &c. The debtor, with a subsequent mortgagee of the slave, gave bond to the plaintiff "to perform the judgment of the court in this action," upon the rendering of the judgment for the debt and foreclosure of the mortgage, the obligors surrendered the slave to the commissioner of the court, and it was sold for less than the debt for which it was mortgaged. Plaintiff took a rule on the obligors to show cause why judgment should not be rendered against them on the bond for the balance of the debt not satisfied by the sale of the slave: Held by the court, that though the literal terms of the bond were broad enough to embrace such claim of plaintiff, yet it was not authorized by the Code of Practice in a case like this, where there was a misjoinder of action. Such bonds are only contemplated by the Code in actions for the recovery of the possession of property, and the liability only extended to such judgment as the court might have rendered on the claim for the immediate possession of the property.

[The facts are set out in the opinion of the court. Rep.]

Geo. R. McKee, for appellant.

1. No objection was made to the form of proceeding in the circuit court, and all irregularity, if any, must be considered as waived.

The allegation of the petition were taken for confessed, consequently proof of value of the slave or hire was unnecessary. The principal question in the case is the effect of the bond executed by the appellees to the appellant to perform the judgment of the court in the suit. This bond is in accordance with the 215 sec. of the Code of Practice. The appellant contends that the appellees are bound to perform the judgment of the court, which was that the appellant recover

of appellee, Tho. W. Pope, five hundred dollars, with interest from the 1st of January, 1854, till paid, and the costs of suit. This judgment has not been performed—$400 only has been paid by the sale of the slave, and a writ of *fiere facias* has been returned as to the remainder, "no property found," &c.

The appellees contend that they have discharged their bond by the delivery of the slave. If such be the proper construction of the bond the object of the legislature, in the enactment of the Code in this respect, will have failed, and its provisions rendered nugatory by construction. Pope is alledged to be insolvent, and that the plaintiff will lose the interest on his debt if he cannot get the possession of the slave, and the benefit of hire. The appellees prevented this by giving this bond, and if they are not responsible upon this bond they might have kept the possession of the slave during the continuance of a protracted law suit, without responsibility for hire; and the statutory remedy proved useless. There is no ambiguity in the provisions of the 215 *section* of the Code, under which the proceeding was had, and "it is not allowed to interpret what has no need of interpretation" (Broome's Maxims, 266.) This is according to the well known and oft repeated maxim "*Quoties in Verbis nulla est Ambiguitas, ibi nulla Expositio contra Verba fienda est.*" This rule is cited and approved by Chief Justice Boyle in *Clay vs. Hopkins,* 3 *Marshall,* 489. The reason of the law may be consulted where there is any ambiguity in the words employed, or where there is apparent conflict between different provisions of the same law; but it is not allowable where there is no such ambiguity. Where there is no ambiguity the words used by the legislature must be taken to mean what they import, and nothing more. The maxim quoted applies equally to the interpretation of acts of parliament, the general rule being a *verbis legis non est vecedendum.* "A court of law will not make any interpretation ' contrary to the express letter of a statute, for noth-

McKee
vs.
Pope.

'ing can so well explain the meaning of the makers 'of the act as their own direct words."

What then is the meaning of the terms used in the Code, and in the bond in this case, "to the effect that the defendant shall perform the judgment of the court in the action. It was not intended to secure the delivery of the property only. If such was the intention why was a different provision made in sec. 235. In that section it is provided, that the sheriff may deliver any attached property to the person in whose possession it may be found, upon the execution, in the presence of the sheriff, of a bond to the plaintiff, by such person, with one or more sufficient securities, to the effect that the obligors are bound in double the value of the property that the defendant shall perform the judgment of the court in the action, *or that the property, or its value, shall be forthcoming, and subject to the order of the court for the satisfaction of such judgment.*

If, in the case under consideration, it was only intended to secure the delivery of the property, why did not the legislature require the execution of a bond similar to that provided for *in section* 235? If the bond provided for by each section was intended to be to the same effect where was the necessity of using different language in the two sections?

The court, in construing statutes, where there seems to be a conflict in its provisions, will so construe it, if practicable, as to give some effect to all its provisions. (*Naz. Lit. and Benevolent Inst. vs. Commonwealth,* 14 *B. Monroe,* 268; see also, as illustrative of the subject, *Bosley vs. Mattingly,* 14 *Ib.* 90; and *Hardin vs. Owings,* 1 *Bibb,* 215.)

The obligors in the bond believed the property to be worth more than plaintiff's debt, and they would secure the surplus by giving the bond. In that they seem to have misjudged. If the negro had died they would have been responsible. (See *Carrol vs. Earley,* 4 *Bibb,* 270; *Gentry vs. Bryant,* 6 *Monroe,* 113; 9 *B.*

*Monroe*, 106.) As the negro did not die their liability is not changed.

This is not like the case of an attaching creditor levying on property in the hands of a stranger, and of course a different bond is required. Here there is no question as to the right of property. The plaintiff claimed the possession because Pope failed to pay the interest on his debt, or deliver up the negro; he had the right to possession of the negro, and sought to obtain it by due process of law, the better to secure his debt; he has been kept out of the possession by the execution of the bond, and the loss of a portion of his demand against Pope. If the obligors in the bond did not believe the negro worth the whole amount of plaintiff's demand, and more, why execute the bond, or have the property valued? The court are referred to the case of *Cook vs. Boyd*, 16 *B. Monroe*, 569.

The effect of the proceeding is the loss to the plaintiff of the value of the hire of the slave from the institution of the suit, as well as depreciation in value of the slave to the time of sale, and this loss is the result of the conduct of the defendants to the rule, and they should make good that loss. Burdett and Kennaird have been benefitted, and cannot complain of the consequences of their own act.

For the rule in construing acts of the same session of the legislature, see *Peyton vs. Moseby*, 3 *Monroe*, 80.

*A. A. Burton*, for appellees—

We remark, in the first place, that there was no bill of exceptions taken by McKee to the decision upon the rule, and as oral testimony was permissable upon the trial, this court is bound to presume that every thing was proved in the circuit court which was necessary to sustain the decision upon the rule. It was not necessary for the appellees to make any written response to the rule, and they had a right, either with or without a response, to prove any fact

which showed that McKee ought not to maintain the rule.

The law at this time authorizes a judgment *in personam* and *in rem* in the same action, and the bond which the law required Pope to give to retain the possession of the slave related alone to that part of the case which was *in rem*, and not to that which was *in personam*. The commissioners report shows that the judgmet *in rem* was complied with by Pope and others, and hence their liability is at an end. There was no judgment for any damages for detaining the slave, in the original action, and whatever right McKee may have against Pope, for such damages, neither he or the other appellees are liable on the bond given by them.

We further contend, that the rule obtained by McKee is a new and separate action, and is not a part of the original action instituted on his petition; and whether it be considered as part of the original action, or a new proceeding altogether, we contend it was not the proper remedy for him to pursue, conceding that he had any right which any remedy would apply to, which is controverted. (See *Civil Code, section* 215.)

*M. L. Rice*, on the same side—

The appellant should have filed his affidavit, stating that the mortgaged property was insufficient to pay the debt, and had the slave hired out. (See *Code*, *sec.* 329.) But he proceeded for the *recovery* of *property* wrongfully detained, which is the old action of detinue; and the appellees executed the bond to perform the judgment of the court, which judgment, at most, could only be for the property or its value, and damages for the detention; and for the purpose of securing the delivery of the property it is provided that it may be valued, and the *valuation* shall be the criterion by which the sheriff shall be governed in taking the bond. (*Sec.* 216.) This shows that it was never intended that the bond should secure the per-

formance of any personal judgment except, perhaps, the damage for detention, which, in this case, would be the hire only. In ordinary attachments the bond secures the performance of the judgment of the court, or the return of the property or its *value*. (See *Code, sec.* 235.) In these cases there is only a personal judgment, and the bond can be discharged by paying the value of the property. Why bind the securities for a greater amount in the other case? They take the possession of the property from the plaintiff in one case as well as the other; by giving the bond, the judgment *in rem* with which they interfered when they took the property, is the one that they are bound to perform. If the bond requires the performance of the personal judgment of the court, the amount *claimed* in the petition, and not the *value* of the property, should control the amount for which the bond should be given. The mortgage debt might be $1,000, and the property taken under the order worth only $100, why require a bond in the sum of $200, if it is to secure the performance of a judgment for $1,000? It is clear that such was not the intention of the legislature.

The original petition in equity cannot be considered as a petition in this proceeding; its statements and prayer are not adapted to it. It was filed before this cause of action could have originated, and it cannot be taken for confessed as to the liability of the appellees. But even, if it could, the allegation of the value of the hire does not authorize a judgment by *default*, and no proof of the value of the hire appears in the record.

Judge Duvall delivered the opinion of the court.

The petition in this case sets out three separate and distinct causes of action:

Dec. 22, 1857.

1. That the defendant, Pope, was indebted to McKee in the sum of $500, by note dated the 1st day of January, 1853, payable twelve months thereafter.

2. That the note was given for the price of a negro woman which McKee had sold to Pope, and that on the 12th January, 1853, the latter had executed to him a mortgage on her to secure the payment of the note.

3. That Pope had subsequently executed a mortgage upon the same slave, and upon some other property, to Burdett and Kinnaird, to secure certain liabilities they had incurred for him; that the slave was not worth more than McKee's debt and interest, and would not sell for more than enough to satisfy the same; that Pope is insolvent, and unless plaintiff could receive the hire of the negro, (worth about $30, or $35 a year,) a portion of his debt will be lost; that no part of his debt has been paid, and that he is entitled to the immediate possession of the slave. He therefore prays judgment for his debt, judgment for foreclosure of the mortgage, and a sale of the slave to satisfy the same, and also for an order to deliver to him the immediate possession of the slave.

McKee having filed the appropriate affidavit, sued out an order for the delivery of the slave, and thereupon the defendants, Pope, Burdett, and Kinnaird, together with Letcher as their surety, executed a covenant by which they "undertake and are bound to the 'plaintiff, Geo. R. McKee, in the sum of eleven hun-'dred and thirty dollars, that the defendants Thomas 'W. Pope, Joshua Burdett, and William H. Kinnaird, 'shall perform the judgment of the court in this ac-'tion."

The defendants having failed to answer, the petition, it was taken for confessed against them, and a judgment was rendered, first, against Pope alone for the amount of the note, with interest from its maturity till paid, and costs; secondly, that Pope's equity of redemption in the slave he foreclosed, and that she be sold by the commissioner, on the terms prescribed, the proceeds of the sale to be applied to the satisfaction of McKee's debt.

The slave was sold under this judgment, McKee becoming the purchaser at the price of $400, leaving a balance still due upon his judgment on the note. Execution against Pope having been returned "no property found," &c., a rule afterwards issued at the instance of McKee, against all the obligors in the bond, requiring them to show cause why judgment thereon should not be entered against them. To this rule the defendants (except Pope,) responded, insisting that they had caused the slave to be delivered to the commissioners in pursuance of the judgment of the court, and were thereby discharged from all further liability upon the bond.

On final hearing the court discharged the rule, and from that judgment McKee has appealed to this court, insisting that, by the plain and unambiguous terms of the bond, the defendants were liable to him for the whole amount of his *judgment* against Pope, upon the note of the latter, less the amount realized by the sale of the slave under the same judgment.

And the only question for us to determine, upon the state of case as presented by the record, is whether the appellees are liable as thus contended for by the appellant, or whether their liability is restricted to such judgment as might have been rendered, in this action, for the delivery of the slave.

There was obviously a misjoinder of the several causes of action in the petition, under the rules prescribed by the Civil Code, *sections* 111 *to* 114, inclusive. They do not each affect all the parties to the action, cannot be properly prosecuted by the same kind of proceedings, and do not all belong to either one of the classes designated by *sub-sections* 1 *to* 7, inclusive. It is true that all objection to the misjoinder must be deemed to have been waived, no exceptions having been taken in the proper mode, or at the proper time, and the misjoinder is referred to here for no other purpose than to explain the cause of much of the difficulty and confusion in which the case is apparently involved.

1. Where there is a misjoinder of causes of action in a proceeding under *secs.* 111 *to* 114 *of the Code of Practice*, unless exception be taken for that cause in the circuit court, the court of appeals will regard the irregularity as waived.

McKee
*vs.*
Pope.

2. A petition was brought to recover the am't of a note and foreclose a mortgage given to secure that note; an order made by the court to the sheriff to deliver the mortgaged property (a slave) to the plaintiffs unless bond was given for the delivery, &c. The debtor, with a subsequent mortgagee of the slave, gave bond to the pl'tff 'to perform the judgment of the court in this action;' upon the rendering of the judgment for the debt and foreclosure of the mortgage, the obligors surrendered the slave to the commissioner of the court, and it was sold for less than the debt for which it was mortgaged. Pl'ff took a rule on the obligors to show cause why judgment sho'd not be rendered against them on the bond for the balance of the debt not satisfied by the sale of the slave: Held by the court, that though the literal terms of the bond were broad enough to embrace such claim of pl'tiff, yet it was not authorized by the *Code of Prac.*

That the terms of the covenant sought to be enforced by this proceeding are, according to their *literal* import, broad enough to comprehend the judgment against Pope for the amount of the note sued on, may be conceded, but the question is, whether such literal construction is at all admissible, under the facts of this case, and would not violate the manifest object intent and meaning of those provisions of the Code under which the bond was executed? *Section* 207 provides that the plaintiff, in an action to recover the possession of specific personal property, may, at any time before judgment, claim the immediate delivery of it; and the succeeding sections of the chapter prescribe the mode in which the preceding is to be conducted, and the terms upon which the relief may be granted. The plaintiff is required among other things, to make affidavit to certain facts enumerated in *section* 208, and to execute a bond to the defendants before the order for the delivery of the property shall be complied with by the sheriff. After pointing out the manner in which the order is to be executed it is provided by *sec.* 215, that the defendant may, in case the property was not taken under a distress warrant or execution, cause a bond to be executed to the plaintiff, in double the value of the property, "to the effect that the defendant shall perform the *judgment* of the court *in the action.*" Now, what "action" do these words refer to? Obviously and necessarily to the action provided for and defined in that chapter, and to no other. Such bond is neither required or allowed to be executed in any other class of actions, or in the prosecution of of any other cause of action, and becomes a nullity when given in a case not authorized by law.

Suppose this had been merely an ordinary action against Pope, to recover the debt due on the note, and the appellees had executed this bond at the instance of the officer serving the summons, would it be seriously contended that it would have imposed any liability whatever upon the obligors, for the

amount of the judgment recovered in such action? And yet that is precisely the effect of what the appellant is seeking to do in this case. He has prosecuted his action, regularly, for the recovery of the possession of the slave; the appellees executed the bond which the law required of them as the only condition upon which they could retain possession, and by which they bound themselves to perform the judgment of the court "in the action." But the appellant chooses to unite in his petition, contrary to the express provisions of the law, a distinct and incongruous cause of action—a claim arising upon contract—and because his judgment on the latter claim was a judgment *in the action*, he insists that it is embraced by the words of the bond, and therefore by the legal obligation arising upon it. We cannot concur in this conclusion. We cannot assume that the legislature intended that a bond which is made appropriate to, and demandable in, but one single class of cases, should bind the obligors to perform a judgment rendered in a different and dissimilar case, especially when, as we have already seen, the two can never be legally united in the same action.

In an action to recover the possession of personal property the judgment, if for the plaintiff, must be for the delivery of the property, if to be had, and if not, for the value thereof, and damages for the detention of the same; and this is the only judgment which the appellees, by the terms of their bond, undertook to perform. If such judgment had been rendered in this case can it be doubted that a delivery of the slave, and payment of the damages for detention by the appellees, would have been a complete discharge of their obligation, whatever might have been the amount recovered against Pope on his note? If not, and if three separate judgments had been rendered according to the prayer of the petition, the appellees, would, on the principles contended for, have been bound for the performance of all of them?

McKEE
vs.
POPE.

in a case like this, where there was a misjoinder of action. Such bonds are only contemplated by the Code in actions for the recovery of the possession of property, and the liability only extended to such judgment as the court might have rendered on the claim for the immediate possession of the property.

But, in point of fact, there was no judgment either for the return of the slave or for her value, or for damages for her detention. Whether the court erred to the prejudice of the appellant, in failing to render such judgment, is an inquiry with which we have nothing to do at present, as this appeal only questions the action of the court in discharging the rule.

Our conclusion, therefore is, that the appellees were liable, upon their bond, only for such judgment as might have been rendered by the court on the appellants claim for the immediate possession of the slave, and that its obligatory effect cannot be regarded as having been so enlarged or extended by the misjoinder in the same action, of a claim arising upon contract, as to comprehend the judgment rendered on the latter cause of action. This conclusion is sustained by the long established and well settled rules of construction, which are too well understood to require repetition here; and by the obvious reason and justice of the case.

The judgment is affirmed.