GINA MCCARTHY, COMMISSIONER OF
ENVIRONMENTAL PROTECTION *v.*
CHROMIUM PROCESS
COMPANY ET AL.
(AC 31331)

Harper, Beach and Schaller, Js.

Argued October 18, 2010—officially released March 15, 2011

*Alan M. Kosloff*, for the appellant (named defendant).

*Patricia A. Horgan*, assistant attorney general, with whom were *Matthew I. Levine*, assistant attorney general, and, on the brief, *Richard Blumenthal*, former attorney general, and *Kimberly P. Massicotte*, assistant attorney general, for the appellee (plaintiff).

*Opinion*

BEACH, J. This case arises from a stipulated judgment between the plaintiff, Gina McCarthy, the commissioner of environmental protection (commissioner), and the defendant, the Chromium Process Company.[1] The defendant claims that the court erred in (1) determining that, pursuant to the terms of the stipulated judgment, it lacked the authority to assess an amount of less than $25,000 for each postjudgment violation and (2) failing to address the applicability of the writ of audita querela to the issue of penalty assessment pursuant to the stipulated judgment.[2] We affirm the judgment of the trial court.

The record reveals the following relevant facts. In September, 2007, the commissioner filed a revised amended complaint against the defendant alleging numerous environmental violations, including violations of the defendant's National Pollution Discharge Elimination System permit (national permit), which authorized the discharge of treated metal finishing

---

[1] Daniel T. Martin, the general manager of the Chromium Process Company, was also named as a defendant in the complaint. The complaint contained one count against Martin, individually, for discharge to the waters of the state without a permit. Martin was a party to the stipulated judgment but did not individually participate in this appeal. We therefore refer to the Chromium Process Company as the defendant.

[2] The defendant made an additional claim on appeal, which we need not address. See footnote 5 of this opinion.

wastewater into the Housatonic River in accordance with certain conditions; violations of its State Pollution Discharge Elimination System permit (state permit), which authorized the discharge of wastewater associated with metal finishing manufacturing processes into the Shelton sanitary sewer system; violations of its storm water general permit, which authorized the discharge of storm water associated with industrial activity; and hazardous waste violations. The commissioner sought, inter alia, temporary and permanent injunctive relief as well as the imposition of civil penalties. On August 25, 2008, the parties filed both a stipulation for judgment and a motion for judgment in accordance with the stipulation. On the same date, the court entered judgment in accordance with the parties' stipulation for judgment, which provided for injunctive relief, imposed monetary penalties for violations alleged in the complaint and imposed stipulated penalties for postjudgment violations of the injunctions.

On December 9, 2008, the commissioner filed a motion requesting the court to schedule a hearing to assess stipulated penalties in accordance with the stipulated judgment. The defendant filed a request for a one year extension of time to pay the existing civil penalties agreed to in the stipulated judgment and filed an objection to the assessment of additional stipulated penalties. The commissioner filed an objection to the defendant's motion for extension. On February 10, 2009, the court held an evidentiary hearing in response to the commissioner's December 9, 2008 motion. The parties filed posthearing briefs, and on March 2, 2009, the court heard oral argument. The court heard further argument on April 7, 2009. On April 8, 2009, the defendant notified the court that it had filed a petition for bankruptcy, and on April 15, 2009, the court stayed the matter. The commissioner filed a motion requesting reconsideration of the bankruptcy stay pursuant to § 362 (b) (4) of title

11 of the United States Code. The defendant filed a reply on June 9, 2009, stating that it did not oppose the commissioner's motion for reconsideration of the stay.

On July 15, 2009, the court filed its memorandum of decision. In its decision, the court granted the commissioner's motion for reconsideration of the bankruptcy stay and lifted the stay. The court found six violations of the stipulated judgment, including a September 18, 2008 violation of the chronic toxicity limits for the Daphnia pulex species.[3] Pursuant to the terms of the stipulated judgment, the court assessed the stipulated penalties at $25,000 per violation for a total penalty of $150,000. The court further determined that, because it found more than four violations, pursuant to the stipulated judgment, the defendant must immediately surrender its national and state permits. The court deferred ruling on the defendant's motion to extend the time to pay civil penalties.[4] This appeal followed.

Following oral argument before this court, we, sua sponte, ordered the trial court to articulate its reasoning with respect to its finding of the September 18, 2008 violation.[5] On December 14, 2010, the court held a hearing on the articulation. At the hearing, the commissioner

[3] Daphnia pulex are crustaceans, known as water fleas, that are used to test the toxicity of pollutants.

[4] The court noted that the defendant's motion to extend the time to pay civil penalties arguably lost its significance because the defendant filed for bankruptcy protection on April 8, 2009, but nevertheless the court deferred its ruling in light of the defendant's bankruptcy.

[5] On appeal, the defendant also claims that the court erred in finding that the results of a September 18, 2008 sample, which exceeded the chronic toxicity limits of its national permit for discharge to the Housatonic River, violated the terms of the stipulated judgment. The defendant argued that, according to paragraph IIH of the stipulated judgment, it is not subject to stipulated penalties for the September 18, 2008 sample. We, sua sponte, ordered the court to articulate the following: "(1) Did the court resolve the defendant's claim that penalties should not be assessed for the September 18, 2008 violations because paragraph IIH of the stipulated judgment requires the defendant within thirty days of the entry of judgment, but no later than September 26, 2008, to correct all violations pleaded in the complaint? (2) If so, please state the factual and legal basis for the resolution of that issue.

orally moved, with the consent of the defendant and approval by the court, to open the judgment for the sole purpose of withdrawing her claim pertaining to the September 18, 2008 violation. The commissioner stated that she was seeking, pursuant to paragraph IIID of the stipulated judgment, financial penalties for four violations at $25,000 each, for a total of $100,000 and no more. As a result, the court modified its prior judgment and reduced the penalties to a total of $100,000. The court noted in its articulation that despite the commissioner's withdrawal of her claim of a September 18, 2008 chronic toxicity violation, the defendant still had five violations and, thus, must, according to the stipulated judgment, surrender its national and state permits.

We first set forth the following principles of law regarding stipulated judgments. "A stipulated judgment constitutes a contract of the parties acknowledged in open court and ordered to be recorded by a court of competent jurisdiction. . . . A stipulated judgment allows the parties to avoid litigation by entering into an agreement that will settle their differences once the court renders judgment on the basis of the agreement. . . . A stipulated judgment, although obtained through mutual consent of the parties, is binding to the same degree as a judgment obtained through litigation." (Citations omitted; internal quotation marks omitted.) *Wallerstein* v. *Stew Leonard's Dairy*, 258 Conn. 299, 310, 780 A.2d 916 (2001). "A judgment rendered in accordance with . . . a stipulation of the parties is to be regarded and construed as a contract." (Internal quotation marks omitted.) *Suffield Development Associates Ltd. Partnership* v. *National Loan Investors, L.P.*, 97

The parties may file simultaneous supplemental briefs of no more than ten pages within ten days after notice of the trial court's articulation is issued." In light of the fact that the commissioner withdrew her claim of a violation based on the September 18, 2008 chronic toxicity reading, we need not address this claim.

Conn. App. 541, 555, 905 A.2d 1214, cert. denied, 280 Conn. 942, 943, 912 A.2d 479 (2006).

I

The defendant first claims that the court erred in determining that, pursuant to the terms of the stipulated judgment, it lacked the authority to assess an amount of less than $25,000 per postjudgment violation. We disagree.

We set forth our standard of review. "Where the language of the contract is clear and unambiguous, the contract is to be given effect according to its terms. A court will not torture words to import ambiguity where the ordinary meaning leaves no room for ambiguity . . . . Similarly, any ambiguity in a contract must emanate from the language used in the contract rather than from one party's subjective perception of the terms. . . . [T]he mere fact that the parties advance different interpretations of the language in question does not necessitate a conclusion that the language is ambiguous. . . . [I]n construing contracts, we give effect to all the language included therein, as the law of contract interpretation . . . militates against interpreting a contract in a way that renders a provision superfluous. . . . If a contract is unambiguous within its four corners, intent of the parties is a question of law requiring plenary review. . . . When the language of a contract is ambiguous, the determination of the parties' intent is a question of fact, and the trial court's interpretation is subject to reversal on appeal only if it is clearly erroneous." (Citations omitted; internal quotation marks omitted.) *Honulik* v. *Greenwich*, 293 Conn. 698, 710–11, 980 A.2d 880 (2009).

Paragraph III of the stipulated judgment, which is entitled "Bond," sets forth a system for assuring that

the defendant would comply with the injunctive provisions of the stipulated judgment, as provided in paragraphs IIA through IIL. The relevant portions are as follows:

"A. [The] Defendant . . . shall, within fifteen (15) days of [the] entry of this Judgment, provide a cash bond of Fifty Thousand Dollars ($50,000.00), to be held by the Superior Court or to be held by a person designated by the Superior Court, to benefit the State of Connecticut Department of Environmental Protection. The purpose of the bond is to assure performance of injunctive provisions contained in Paragraphs IIA. through II.L. of this Judgment and to secure Stipulated Penalties assessed for any future violation of Paragraphs IIA. through II.L. of this Judgment . . . .

"B. The Defendant . . . shall maintain the bond of $50,000.00 consistent with the provisions of this Section III. In the event that the bond of $50,000.00 is depleted, the Defendant . . . shall, within ten (10) days of depletion, replenish the bond with an additional $50,000.00 cash bond in the same manner and for the same purposes as set forth in Paragraph III.A. . . .

"C. The bond provisions shall remain in place for five years from entry of this Judgment.

"D. Until such time as the bond is released, fully exhausted or expires pursuant to paragraph III.C., any violation of paragraphs II.A. through II.L. of this judgment shall result in a stipulated interim civil penalty ('Stipulated Penalty') of Twenty-Five Thousand Dollars ($25,000) per day for each day of each violation.

"E. In the event of violations of Paragraphs II.A. through II.L. of this Judgment, the Commissioner may file a Request for a hearing for an Order of Assessment of the Stipulated Penalty with the Superior Court. After

a hearing and any assessment by the court, such Stipulated Penalty or penalties shall be deducted from the principal amount of the bond and paid to the 'Treasurer, State of Connecticut' . . .

"F. In the event that there are violations of Paragraphs IIA. through II.L. of this Judgment, and the bond has been exhausted, any further violation of Paragraphs IIA. through II.L. of this Judgment shall automatically, upon a finding of such violation by the court, be deemed a surrender of [National Pollution Discharge Elimination System] Permit No. CT0000744 and State Permit No. SP0001259 and discharges under these permits shall immediately cease."

The defendant claims in its brief[6] that the court erred in concluding that the penalties being sought by the commissioner fell within paragraph IIID, which provides for penalties of $25,000 per day per violation. The defendant contends, essentially, that the stipulated judgment is ambiguous because paragraph V16, in contradiction to paragraph IIID, provides that the civil penalty for each violation shall not exceed $25,000 per day.

In its memorandum of decision, the court found six violations and, pursuant to paragraph IIID of the stipulated judgment, assessed each violation at $25,000 for a total stipulated penalty of $150,000. At the hearing on the motion for articulation, however, the commissioner stated that she was seeking, pursuant to paragraph IIID of the stipulated judgment, financial penalties for only four violations at $25,000 each for a total of $100,000 and no more. As a result, the court modified its prior judgment and reduced the penalties to a total of $100,000. Accordingly, the court assessed financial penalties for four violations under paragraph IIID of the stipulated judgment. To the extent that the defendant's

---

[6] Neither party filed supplemental briefs in response to the court's articulation.

claim still stands, we conclude that the court did not err in assessing financial penalties for four violations under paragraph IIID of the stipulated judgment.

The challenged language of the stipulated judgment is clear and unambiguous.[7] Paragraph IIID clearly provides that "[u]ntil such time as the bond is released, fully exhausted or expires pursuant to paragraph III.C," any violation of the injunctive provisions "shall result in a stipulated interim civil penalty . . . of Twenty-Five Thousand Dollars ($25,000) per day for each day of each violation." Under the clear language of this paragraph, a penalty of $25,000 is imposed on the defendant for each day of each violation of the injunctive provisions. It is clear that paragraph IIID governs penalties for violations of the injunctive provisions that occur before the exhaustion of the required bonds.

[7] The defendant argues, referencing the testimony of Oswald Inglese, the director of the department of environmental protection water permitting and enforcement division, that the commissioner's intent in executing the stipulated judgment was to seek assessment of stipulated penalties "up to $25,000" per day. The testimony of Inglese does not supersede the language of the stipulated judgment. The stipulated judgment is clear and unambiguous, and the intent of the parties is clear from the language of the stipulated judgment itself. The parties' "intent must be determined from the language of the instrument and not from any intention either of the parties may have secretly entertained. . . . When the language is clear and unambiguous . . . the contract is to be given effect according to its terms." (Internal quotation marks omitted.) *Crews* v. *Crews*, 107 Conn. App. 279, 289–90, 945 A.2d 502 (2008), aff'd, 295 Conn. 153, 989 A.2d 1060 (2010).

The defendant further argues that the stipulated judgment cannot be read to include the "onerous and patently unjust requirement" of $25,000 per day per violation and that the commissioner is not authorized by General Statutes § 22a-438 (a) to collect the fixed penalty of $25,000. Section 22a-438 (a) provides in relevant part: "Any person who or municipality which violates any provision of this chapter, or section 22a-6 or 22a-7 shall be assessed a civil penalty not to exceed twenty-five thousand dollars, to be fixed by the court, for each offense. . . ." This argument is unavailing. The parties agreed to the terms of the stipulated judgment, which the court accepted, and the $25,000 penalty provided by paragraph IIID is within the limits of the penalty set forth in § 22a-438 (a).

The defendant argues, however, that the language of paragraph IIID contradicts the language of paragraph V16. We do not agree. Paragraph V16 provides that "[i]n the event that any provision of this Judgment is violated by [the] defendants, the Superior Court may assess an additional civil penalty for each such violation, not to exceed $25,000.00 per day." Construing the contract as a whole; see *Barnard* v. *Barnard*, 214 Conn. 99, 109, 570 A.2d 690 (1990); and giving " 'effect to all the language included therein' "; *Honulik* v. *Greenwich*, supra, 293 Conn. 711; we conclude that penalties provided in paragraph V16 apply after the pendency of the bond. "A court will not torture words to import ambiguity where the ordinary meaning leaves no room for ambiguity and words do not become ambiguous simply because lawyers or laymen contend for different meanings." (Internal quotation marks omitted.) *Barnard* v. *Barnard*, supra, 110. Thus, once the bond has been released, fully exhausted or expires, and the defendant violates the injunctive provisions of the stipulated judgment, then, according to paragraph V16, the court may assess penalties of up to $25,000 per day per violation.

Paragraph IIID governs until the bond is exhausted. Pursuant to paragraph IIIB, the defendant is required to maintain a bond of $50,000 and is required to replenish the bond with an additional $50,000 in the event that the first bond is depleted. Accordingly, the two consecutive cash bonds of $50,000 would be exhausted once the defendant's stipulated penalties under paragraph IIID reach $100,000. With a stipulated penalty of $25,000 per violation under paragraph IIID, the bond would be exhausted after a total of four violations. Accordingly, the court properly applied paragraph IIID and properly assessed the penalty at $25,000 for each of the four violations for which the commissioner sought financial penalties.

## II

The defendant next claims that court erred in failing to address in its decision the issue of the applicability of the writ of audita querela[8] to the issue of penalty assessment pursuant to the stipulated judgment. We decline to review this claim.

During the March 2, 2009 hearing, the court asked the parties to brief the issue of whether the writ of audita querela could be invoked regarding the defendant's motion for extension of time to pay the existing penalties. The court heard further argument on April 7, 2009. The court's memorandum of decision did not contain any specific finding regarding the applicability of the writ of audita querela.

It is the duty of the appellant to provide this court with an adequate record for review, and the defendant failed to file a motion for articulation. "It is well established that [i]t is the appellant's burden to provide an adequate record for review. . . . It is, therefore, the responsibility of the appellant to move for an articulation or rectification of the record where the trial court has failed to state the basis of a decision . . . to clarify the legal basis of a ruling . . . or to ask the trial judge to rule on an overlooked matter. . . . In the absence of any such attempts, we decline to review this issue." (Internal quotation marks omitted.) *Dickinson* v. *Mullaney*, 284 Conn. 673, 680, 937 A.2d 667 (2007); see also Practice Book §§ 60-5 and 66-5. Accordingly, we decline to review this claim.

The judgment is affirmed.

In this opinion the other judges concurred.

---

[8] "A writ of audita querela is a writ issued to afford a remedy to a defendant against whom judgment had been rendered, but who had new matter in defense . . . arising, or at least raisable for the first time, after judgment." (Internal quotation marks omitted.) *State* v. *Cotto*, 111 Conn. App. 818, 819 n.3, 960 A.2d 1113 (2008).