IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
January 17, 2012 Session

## BOURLAND, HEFLIN, ALVAREZ, MINOR & MATTHEWS, PLC v. RODNEY HEATON and MARGARET HEATON and LOEB PROPERTIES

Direct Appeal from the Chancery Court for Shelby County
No. CH-09-0514-2      Arnold Goldin, Chancellor

No. W2011-01693-COA-R3-CV - Filed April 9, 2012

The parties entered into a Contract for the sale and purchase of commercial real estate, and the purchaser deposited $50,000.00 earnest money.  The purchaser terminated the Contract, citing the economic downturn and the purchaser's resulting inability to secure retail tenants for its planned development.  The parties disputed whether such termination was appropriate under the Contract, and thus, whether the purchaser was entitled to a return of its earnest money.  The trial court granted summary judgment in favor of the purchaser and further awarded the purchaser its attorney fees and expenses.  We find the economic downturn did not provide an appropriate basis for termination of the Contract.  Thus, we reverse the trial court's grant of summary judgment to the purchaser, and we enter summary judgment in favor of the sellers.  The sellers shall be awarded the $44,362.57 remaining in the escrow account, and the purchaser shall pay the sellers an additional $5,637.43, for a total of $50,000.00.  Additionally, pursuant to the Contract, the sellers are awarded attorney fees and expenses incurred in both the trial court and in this Court, and we remand for a determination of such award.

**Tenn. R. App. P. 3; Appeal as of Right; Judgment of the Chancery Court Reversed and Remanded**

ALAN E. HIGHERS, P.J., W.S., delivered the opinion of the Court, in which DAVID R. FARMER, J.,  and J. STEVEN STAFFORD, J., joined.

Joseph C. Clark, Jonathan L. May, Memphis, Tennessee, for the appellant, Rodney Heaton and Margaret Heaton

William M. Jeter, Memphis, Tennessee, for the appellee, Loeb Properties, Inc.

## OPINION

### I.  FACTS & PROCEDURAL HISTORY

Pursuant to a Real Estate Purchase Agreement (the "Contract") executed on October 3, 2008, Rodney and Margaret Heaton agreed to sell, and Loeb Properties, Inc. ("Loeb Properties") agreed to purchase, 4.18 acres of commercial property located in Princeton, Kentucky, for $700,000.00.[1]  As required by the Contract, Loeb Properties deposited $50,000.00 earnest money into an escrow account held by Bourland, Heflin, Alvarez, Minor & Matthews, PLC ("Bourland Heflin").

In a March 2, 2009 letter, Loeb Properties notified the Heatons that it was terminating the Contract effective March 3, 2009, based upon "the current state of the economy" and its inability to secure retail tenants for the planned development.  Following termination, the parties disagreed as to the appropriate disbursement of the $50,000.00 earnest money held by Bourland Heflin–each arguing that it was entitled to such.  As a result, Bourland Heflin filed a Complaint for Interpleader with the trial court and it deposited the earnest money with the Clerk and Master.[2]

Subsequently, both parties filed competing motions for summary judgment.  In its motion, Loeb Properties contended that its termination based upon its inability to secure retail tenants was appropriate pursuant to Section 7 of the Contract, which provides:

> 7.  <u>INSPECTION PERIOD/CANCELLATION</u>.  Purchaser shall have the right to inspect the Property in all respects for ninety (90) days after the delivery to Purchaser of all the documents described on Exhibit A (the "Inspection Period").  All information and documents provided by Seller shall be complete and accurate to the best of Seller's knowledge and belief. All and any such inquiry, inspection and examination of the Property and related issues, including, but not limited to, survey, title work, environmental issues, soil tests, borings, appraisal, zoning and utilities, must be satisfactory and acceptable to Purchaser, and if not, Purchaser may, in its sole discretion, cancel this Agreement upon written notice within the Inspection Period, and in such event the Earnest Money shall be returned to Purchaser and neither

---

[1] The Contract was later amended in ways not relevant to this appeal.

[2] Subsequently, Bourland Heflin was dismissed with prejudice from the case and $5,637.43 from the $50,000.00 earnest money was disbursed to it for attorney fees and costs incurred in bringing the interpleader action.

party will have any further obligation or liability under this Agreement. Seller agrees to cooperate reasonably with any such investigations, inquiries, inspections or studies made by or at Purchaser's discretion. Purchaser shall have the right to extend the Inspection Period in sixty (60) day increments, not to exceed one (1) extension by delivering written notice to Seller prior to expiration of the then-current Inspection Period expiration. If this Purchase Agreement is not terminated in writing as provided for herein prior to the end of the Inspection Period, the Earnest Money shall become non-refundable to Purchaser but applicable to the Purchase Price at the end of said Inspection Period, unless there is a default by Seller.

The Heatons, however, argued that the Contract did not contemplate termination based upon an economic downturn, and therefore that Loeb Properties' had breached the Contract and forfeited its earnest money. Both parties sought attorney fees and expenses pursuant to Section 21(g) of the Contract, which entitled the prevailing party to such.

Following a hearing on the parties' motions for summary judgment, the trial court entered an order granting summary judgment in favor of Loeb Properties, relying upon Section 8(a) of the Contract, which provides:

8. CONDITIONS PRECEDENT. In addition to other conditions set forth in this Agreement, including those related to inspection of the Property, Purchaser's obligation to purchase the Property shall be subject to and contingent upon the following conditions precedent, any or all of which Purchaser may waive by written notice only:

(a) Adverse Conditions. There shall be no material adverse change in the condition of or affecting the Property not caused by Purchaser between the end of the Inspection Period and Closing.

Specifically, the trial court found that "[t]he change in the national economic climate, particularly in the real estate sector, is . . . a material change so as to trigger Loeb's right under Section 8[(a)] to terminate the contract between the parties." Therefore, the trial court ordered that the remaining $44,362.57 earnest money be paid to Loeb Properties, that the Heatons pay Loeb Properties $5,637.43 "to make Loeb [Properties] whole for the $50,000.00 earnest money originally placed in escrow[,]" and that the Heatons pay Loeb Properties' $8,000.00 attorney fees pursuant to the Contract.[3] The Heatons timely appealed.

_____

[3]The trial court entered an Amended Final Order noting that its previous order had inadvertently
(continued...)

## II. ISSUE PRESENTED

On appeal, we are asked to determine whether the trial court erred in granting summary judgment in favor of Loeb Properties rather than in favor of the Heatons. For the following reasons, we reverse the trial court's grant of summary judgment and award of attorney fees and expenses to Loeb Properties and we grant summary judgment and attorney fees and expenses to the Heatons.

## III. STANDARD OF REVIEW

Summary judgment is appropriate "when the undisputed facts, as well as the inferences reasonably drawn from the undisputed facts, support only one conclusion–that the moving party is entitled to a judgment as a matter of law." *Green v. Green,* 293 S.W.3d 493, 513 (Tenn. 2009) (citing *Griffis v. Davidson County Metro. Gov't,* 164 S.W.3d 267, 283-84 (Tenn. 2005); *Pero's Steak & Spaghetti House v. Lee,* 90 S.W.3d 614, 620 (Tenn. 2002)). The only issue before this Court is the appropriate construction of the Contract between Loeb Properties and the Heatons. "Questions of contract interpretation are generally considered to be questions of law, and thus are especially well-suited for resolution by summary judgment." ***Ross Products Div. Abbott Labs. v. State***, No. M2006-01113-COA-R3-CV, 2007 WL 4322016, at \*2 (Tenn. Ct. App. Dec. 5, 2007) *perm. app. denied* (Tenn. Apr. 28, 2008) (citing *Doe v. HCA Health Servs. of Tenn.*, 46 S.W.3d 191, 196 (Tenn. 2001); *Guiliano v. Cleo*, 995 S.W.2d 88, 95 (Tenn. 1999); *Hamblen Co. v. City of Morristown*. 656 S.W.2d 331, 335-36 (Tenn. 1983)). The resolution of a motion for summary judgment is a matter of law, which we review de novo with no presumption of correctness. ***Martin v. Norfolk S. Ry. Co.,*** 271 S.W.3d 76, 84 (Tenn. 2008). However, "we are required to review the evidence in the light most favorable to the nonmoving party and to draw all reasonable inferences favoring the nonmoving party." ***Id.*** (citing *Staples v. CBL & Assocs., Inc.,* 15 S.W.3d 83, 89 (Tenn. 2000)).

## IV. DISCUSSION

### *A. Governing Law*

The Contract at issue provides that it "shall be governed by and construed in accordance with the laws of the State of Kentucky." "'Tennessee will honor a choice of law

---

[3](...continued)
entered a final order pursuant to Tennessee Rule of Civil Procedure 54.02 when the prior judgment apparently disposed of all claims.

clause if the state whose law is chosen bears a reasonable relation to the transaction and absent a violation of the forum state's public policy.'" **Wright v. Rains**, 106 S.W.3d 678, 681 (Tenn. Ct. App. 2003) (quoting *Bright v. Spaghetti Warehouse, Inc.*, No. 03A01-9708-CV-00377, 1998 WL 205757, at *5 (Tenn. Ct. App. Apr. 29, 1998)).

In this case, the Heatons are residents of Kentucky and the real estate that is the subject of the Contract is located in Kentucky. Finding a "reasonable relation" to Kentucky and no objection by either party to the application of Kentucky law, we will uphold the choice of law provision in the Contract. Thus, we will apply the substantive law of the State of Kentucky, while applying the procedural law of the State of Tennessee. **See State v. Early**, 934 S.W.2d 655, 657 (Tenn. Ct. App. 1996).

### *B. Summary Judgment*

It is undisputed that Loeb Properties terminated the contract based upon its inability to secure retail tenants as a result of the "global economic downturn." On appeal, the parties dispute only whether this was a proper ground for termination pursuant to the Contract, entitling Loeb Properties to a return of its earnest money. Loeb Properties contends that its termination was proper pursuant to either Section 7 or Section 8(a) of the Contract. We consider each provision below.

#### 1. Section 7

As set out above, Section 7 provides that the Heatons' delivery of certain documents will trigger a ninety day "Inspection Period" during which Loeb Properties, "in its sole discretion," may terminate the Contract upon written notice if "[a]ll and any such inquiry, inspection and examination of the Property and *related issues*, including, but not limited to, survey, title work, environmental issues, soil tests, borings, appraisal, zoning and utilities" are unsatisfactory or unacceptable to Loeb Properties. (emphasis added). If such termination is made, Loeb Properties is entitled to a return of its earnest money. However, Section 7 further provides that "[i]f this [Contract] is not terminated in writing as provided for herein prior to the end of the Inspection Period, the Earnest Money shall become non-refundable to Purchaser but applicable to the Purchase Price at the end of said Inspection Period, unless there is a default by Seller."

On appeal, the parties dispute whether termination due to the economic downturn was included within the class of "related issues" for which termination was permitted under Section 7. Loeb Properties asserts that "[t]he plain language of the Contract is clear and unambiguous: Loeb Properties' inability to secure the commitment of retail tenants is a valid basis for termination of the contract during the Inspection Period." In making this assertion,

Loeb Properties relies upon Section 7's language that Loeb Properties has "sole discretion" to terminate the Contract if unsatisfactory or unacceptable "issues" are revealed during the Inspection Period. Additionally, at oral argument before this Court, Loeb Properties emphasized Section 7's "all and any such inquiry" language, and it argued that this provision effectively converted the Contract into an option contract which could be terminated by Loeb Properties for any reason or no reason at all. The Heatons, however, argue that the Contract unambiguously provides that Loeb Properties' inability to secure retail tenants is not a valid basis for termination during the Inspection Period, and alternatively, they argue that even if ambiguous, the Contract should be interpreted as precluding termination based upon an economic decline.[4]

"The primary object in construing a contract . . . is to effectuate the intentions of the parties." **Cantrell Supply, Inc. v. Liberty Mut. Ins. Co.**, 94 S.W.3d 381, 384 (Ky. App. 2002) (citing *Withers v. Commonwealth, Dept. of Transp.*, 656 S.W.2d 747, 749 (Ky. App. 1983)). When there exists no ambiguity, "the parties' intention must be gathered from the four corners of the instrument at issue, and extrinsic evidence may not be admitted to vary the instrument's terms." **First Home, LLC v. Crown Comm'ns, Inc.**, No. 2010-CA-001701-MR, 2012 WL 95560, at *5 (Ky. App. Jan. 13, 2012) (citing *McCarthy v. Chromium Process Co.*, 13 A.3d 715, 720 (Conn. App. 2011)). Typically, if "a contract is ambiguous or silent on a vital matter, a court may consider parol and extrinsic evidence involving the circumstance surrounding execution of the contract, the subject matter of the contract, the objects to be accomplished, and the conduct of the parties." **Cantrell Supply**, 94 S.W.3d at 385. However, at the summary judgment stage, ambiguity with regard to a material fact creates a genuine issue precluding summary judgment. **See generally Frear v. P.T.A. Indus., Inc.**, 103 S.W.3d 99, 106 n.17 (Ky. 2003) ("If the trial court had perceived an ambiguity, a

---

[4]The Heatons cite certain contract interpretation maxims as helpful in determining the proper scope of Section 7's termination grounds. However, because we find the contract unambiguous, we will not resort to such maxims. **See generally,** *Klein v. Miller*, No. 2010-CA-000750-MR, 2011 WL 6955927, at *5 (Ky. App. 2012) ("[T]he maxim *expressio unius est exclusio alterius*, i.e., the enumeration of particular things excludes the idea of something else not mentioned . . . 'is resorted to only when the relevant language is ambiguous[.]'" (quoting *Public Ser. Comm'n of Ky. v. Commonwealth*, 320 S.W.3d 660, 666 (Ky. 2010)); **McMullin v. McMullin**, 338 S.W.3d 315, 322 (Ky. App. 2011), ("[T]he rule of *contra proferentem*, is a maxim of contract interpretation that *ambiguities* will be construed against the drafter of a contract when the contract is susceptible of two meanings.") (emphasis added); **ACSR, Inc. v. Cabinet for Health Servs.**, 32 S.W.3d 96, 101 (Ky. App. 2000) ("*Ejusdem generis* is merely a general rule to aid in construing otherwise ambiguous statutory provisions[.]") (citing *Norfolk & Western Ry. Co. v. Am. Train Dispatcher's Ass'n*, 499 U.S. 117, 129, 111 S.Ct. 1156, 1163, 113 L.Ed.2d 95 (U.S. 1991)); **McKee v. Pope**, 18 B.Mon. 548, 57 Ky. 548, 1857 WL 4430, at *2 (Ky. App. 1857) (A court "'is not allowed to interpret what has no need of interpretation[.]'") (quoting Broome's Maxims, 266).

material issue of fact would have existed to preclude summary judgment.") (citations omitted); *see also First Home*, 2012 WL 95560, at *5 ("If there is an ambiguity in the Declaration of Easement, this is a material fact about which there is a genuine issue precluding summary judgment.") (citations omitted).

Again, Loeb Properties contends that the Contract, itself, unambiguously authorizes termination based upon economic decline; however, in support of this argument, Loeb Properties cites correspondence between the parties which allegedly demonstrates "Loeb's contemplation that the economic difficulties were a valid reason to terminate – and the lack of any objecting correspondence in the Records that indicates the Heatons['] acquiescence in this understanding." We may not, however, properly consider this proffered evidence at this stage: If the Contract is unambiguous, the extrinsic evidence is inadmissible to vary its terms, and if the Contract is, in fact, ambiguous, the case is not ripe for summary judgment.

"A contract is ambiguous if a reasonable person would find it susceptible to different or inconsistent interpretations." ***Cantrell Supply***, 94 S.W.3d at 385 (citing *Transport Ins. Co. v. Ford*, 886 S.W.2d 901, 905 (Ky. App. 1994); *Luttrell v. Cooper Inds., Inc.*, 60 F.Supp.2d 629, 631 (E.D. Ky. 1998)). However, "[t]he fact that one party may have intended different results . . . is insufficient to construe a contract at variance with its plain and unambiguous terms." ***Id.*** (citing *Green v. McGrath*, 662 F.Supp. 337, 342 (E.D. Ky. 1986)). We will not "'torture words to import ambiguity into a contract where the ordinary meaning leaves no room for ambiguity.'" ***First Home***, 2012 WL 95560, at *5 (quoting *McCarthy*, 13 A.3d at 720). "Where the contract's language is clear and unambiguous, the agreement is to be given effect according to its terms, and 'the court will interpret the contract's terms by assigning language its ordinary meaning and without resort to extrinsic evidence.'" ***Id.*** (quoting *Frear*, 103 S.W.3d at 106); *see also Mounts v. Roberts*, 388 S.W.2d 117, 119 (Ky. 1965) ("In the absence of ambiguity a written instrument will be strictly enforced according to its terms.") (citations omitted).

Despite Loeb Properties' assertion to the contrary, its ability, pursuant to Section 7, to inspect the property and to require satisfactory and acceptable, "all and any such inquiry, inspection and examination of the Property and related issues, including, but not limited to, survey, title work, environmental issues, soil tests, borings, appraisal, zoning and utilities," simply cannot be interpreted to unambiguously authorize termination due to an economic downturn. The Contract allows Loeb Properties "in its sole discretion" to terminate the Contract; however, this discretion is not unrestrained, as Loeb Properties suggests. Instead, Loeb Properties may exercise its discretion to terminate the Contract only with regard to its "inquiry, inspection and examination of the Property and related issues." We recognize that the list of articulated "issues" about which Loeb Properties is permitted to inquire, inspect, and examine during the Inspection Period is expressly not exhaustive. But, construing the

Contract as a whole, as we are required to do, we find the class of permissible "issues" upon which termination may be based is implicitly, and without serious challenge, limited to those issues relating to the physical and legal fitness of the property. Additionally, "[a]ny and all such inquiry" may not reasonably be expanded to include any detrimental discovery notwithstanding its utter unrelation to the articulated termination grounds. Accordingly, we find that Section 7 unambiguously does not include an economic downturn within the class of "issues" for which termination during the Inspection Period may be based.[5]

## 2. Section 8(a)

Having determined that Section 7 does not permit termination based upon an economic downturn, we now consider Loeb Properties' alternative argument that termination was proper pursuant to Section 8(a). Again, Section 8(a) of the Contract provides that Loeb Properties' purchase obligation is "subject to and contingent upon[,]" among other things, there being "no material adverse change in the condition of or affecting the Property not caused by Purchaser between the end of the Inspection Period and Closing." Below, the trial court *sua sponte* determined that "[t]he change in the national economic climate, particularly in the real estate sector, is . . . a material change so as to trigger Loeb's right under Section 8[(a)] to terminate the contract between the parties."

Like Section 7, Loeb Properties contends that Section 8(a) unambiguously allows termination based upon an economic decline. Specifically, Loeb Properties maintains that "anything that obstructed the leasing of retail space would most assuredly affect its fitness" and, therefore, qualify as an adverse condition. The Heatons, however, argue that Section 8(a) unambiguously does not allow for such termination, and that even if the provision is ambiguous, both the context of the Contract as a whole and the circumstances surrounding its execution support an interpretation which excludes economic decline as a proper termination ground.

We need not resolve the parties' dispute as to whether the economic downturn constitutes an "adverse change" "affecting" the property. Even if we assume, *arguendo*, that the downturn qualifies as such, it undisputedly did not occur "between the end of the Inspection Period and Closing" as required by the plain language of Section 8(a). By Loeb Properties' own acknowledgment, the economic downturn occurred *prior to* the Contract's execution. We reject Loeb Properties' argument that an *already occurring* adverse condition

---

[5]On appeal, the parties dispute whether Loeb Properties' termination was timely made during the Inspection Period. However, based upon our conclusion that Section 7 does not contemplate termination due to an economic downturn, we find it unnecessary to consider the timeliness of Loeb Properties' termination.

is sufficient to warrant termination under Section 8(a), as the specific temporal limitations set forth in Section 8(a) clearly require an "adverse *change*" "between the end of the Inspection Period and Closing." (emphasis added). Accordingly, we find that the trial court erred in allowing Loeb Properties to terminate the Contract pursuant to Section 8(a), and we reverse its grant of summary judgment to Loeb Properties on that basis.

## IV.  CONCLUSION

Based upon our above conclusions that the economic downturn did not provide an appropriate basis for termination pursuant to Section 7 or Section 8(a) of the Contract, we find that Loeb Properties' termination constituted a default, thereby entitling the Heatons to retain Loeb Properties' earnest money. Summary judgment is entered in favor of the Heatons. The Heatons shall be awarded the $44,362.57 remaining in the escrow account, and Loeb Properties shall pay the Heatons an additional $5,637.43, for a total of $50,000.00. Additionally, pursuant to Section 21(g) of the Contract, the Heatons are awarded attorney fees and expenses incurred in both the trial court and in this Court, and we remand for a determination of such award. Costs of this appeal are taxed to Appellee, Loeb Properties, for which execution may issue if necessary.

_____
ALAN E. HIGHERS, P.J., W.S.