WALTER J. PRYMAS *v.* CITY OF
NEW BRITAIN ET AL.
(AC 30976)

Flynn, C. J., and Harper and Borden, Js.*

---

* The listing of judges reflects their seniority status on this court as of the date of oral argument.

512

Argued March 22—officially released July 13, 2010

*Harold J. Geragosian,* for the appellant (plaintiff).

*Irena J. Urbaniak,* city attorney, for the appellees (defendants).

*Opinion*

FLYNN, C. J. The plaintiff, Walter J. Prymas, appeals from the judgment of the trial court, rendered following a trial to the court, in favor of the defendants, the city of New Britain (city), William A. DeMaio, Sandra C. Loether and the New Britain board of parks and recreation (board). On appeal, the plaintiff claims that the court improperly failed to determine that his termination from his position of employment was unlawful because it was not authorized by the mayor of New Britain or his designee. We affirm the judgment of the trial court.

The plaintiff's appeal is based on the following record facts. On July 22, 2004, DeMaio, who was at the time the city's acting director of parks and recreation, wrote to the plaintiff to confirm his appointment, under a six month probationary period, to the position of grounds-keeper for the parks and recreation department. The plaintiff's employment, which commenced on September 8, 2004, was governed by the terms of a collective bargaining agreement (agreement) between the city and Local 1186, American Federation of State, County and Municipal Employees, Council 4, AFL-CIO. At the beginning of his employment, the plaintiff attended an orientation meeting at which he and other new employees discussed with supervisors the terms of the city's sexual harassment, affirmative action and violence in the workplace policies and was provided copies of those policies.

The plaintiff's performance was evaluated in November, 2004, and January, 2005. The evaluations described the plaintiff's performance of his employment duties as generally favorable, but they also contained serious concerns about his inappropriate conduct, including

making sexually explicit remarks and possessing porno-graphic material at work. DeMaio conducted fact-find-ing hearings on January 31 and February 2, 2005, to address the plaintiff's probationary employment status. At the conclusion of the hearings, DeMaio determined that the plaintiff had violated the city's sexual harass-ment policy in that he had brought photographs of a nude woman to work on at least two occasions, dis-playing them to his coworkers; made sexual comments about female students at Central Connecticut State Uni-versity that could be heard by a coworker during the workday; and jokingly offered to perform a sexual act on a male coworker if this would facilitate the plaintiff's purchase of the coworker's motorcycle. DeMaio deter-mined that the plaintiff had violated the city's affirma-tive action and violence in the workplace policies by making comments to his coworkers that he "hated the Puerto Ricans living above [him] and wanted to take [his] gun and shoot them." The plaintiff admitted this conduct during the fact-finding hearings.

On February 8, 2005, DeMaio informed the plaintiff in writing of his decision to recommend to the personnel director that, pursuant to § 4.2 (B) of the agreement,[1] the plaintiff's employment be terminated for failure to complete the probationary period satisfactorily. DeMaio recommended in a February 8, 2005 letter to Loether, the city's acting personnel director, that the

[1] Section 4.2 (B) of the agreement provides: "At any time during the initial probationary period, the [d]epartment [h]ead may recommend in writing to the [p]ersonnel [d]irector the removal of an employee, if in his/her opinion, the working test indicates that such employee is unable or unwilling to perform the duties of the position satisfactorily or that his/her habits and dependability do not merit his/her continuance in the service. Such recom-mendation of the [d]epartment [h]ead and the reasons therefore shall be in writing to the [p]ersonnel [d]irector with a copy to the employee and to the [u]nion if it requests it. No employee shall be removed from a position during his/her probationary period without the approval of the [p]ersonnel [d]irector. The employee, if removed, shall not have any right to be restored to the eligibility list from which he/she was appointed."

plaintiff's employment be terminated. Loether, on the following day, approved the recommendation and sent to the plaintiff a letter stating that his employment was terminated, effective immediately, pursuant to § 4.2 (B) of the agreement.

The plaintiff thereafter filed a three count complaint against the defendants. In count one, the plaintiff alleged that the defendants' actions "constituted a wrongful termination of the plaintiff from his employment, expressly breaching its expressed and implied agreement, were invalid and without right or color of right, and the actions were invalid and void . . . ." He claimed that the defendants had acted "illegally, arbitrarily and in the abuse of their discretion . . . [t]hey lacked the authority to terminate the plaintiff . . . [t]he [board] and/or the [m]ayor was the only possible authority possessing the power to terminate the plaintiff and did not do so . . . [and] Loether, as the [a]cting [p]ersonnel [d]irector, did not have the power or authority to terminate the plaintiff's employment, since she possessed simply the role of 'approval' presumably to the board . . . or to the [m]ayor as the appointing authority . . . ." The defendants' conduct, according to the complaint, violated the plaintiff's constitutional and contractual rights, and he sought a writ of mandamus ordering the defendants to reinstate him to his former position and to compensate him for his lost wages and benefits.[2]

Following a trial to the court, the court, *Tanzer, J.*, rendered judgment in favor of the defendants. The court perceived that the issue in the case was whether the

---

[2] In count two of the complaint, the plaintiff alleged that DeMaio knowingly had made defamatory and false statements concerning the plaintiff during the fact-finding hearings and in the letter to Loether. The complaint's third count stated a claim for indemnification of the individual defendants by the city pursuant to General Statutes § 7-465. The plaintiff abandoned these claims at trial.

plaintiff "was unlawfully terminated from his employment as [g]roundskeeper because the [a]cting [p]ersonnel [d]irector, Loether, terminated him rather than the [b]oard and/or the [m]ayor." Rejecting the plaintiff's arguments to the contrary, the court, interpreting the city charter and the agreement, held that (1) under the city charter, the board had the duty to advise and consult with the parks and recreation department head and to make policy, but it did not possess the power to appoint or remove employees; (2) although the charter conferred on the mayor the power to terminate a probationary employee, neither the charter nor the agreement mandated that only the mayor had the power to do so; (3) the language of the agreement was controlling, as § 5-6 (b)[3] of the charter authorized the mayor or his designee to terminate any employee "except as otherwise provided by," inter alia, the agreement; (4) the only evidence presented as to who had the authority to appoint the plaintiff indicated that it was DeMaio, as demonstrated by his July 22, 2004 letter to the plaintiff and a report of personnel action concerning the plaintiff dated February 10, 2005, that DeMaio signed as "Department Head/Appointing Authority"; (5) DeMaio had the power to recommend, and Loether the power to approve, the plaintiff's termination, and the termination was not illegal or violative of due process; and (6) the "evidence abundantly shows that, in the course of his probationary employment, [the plaintiff] engaged in conduct that provided cause for his termination as stated in DeMaio's letter to [the plaintiff] of February 8, 2005." The present appeal followed.

On appeal, the plaintiff claims that the court improperly determined that his termination from employment

---

[3] Section 5-6 (b) of the city charter, titled "Employees of the [c]ity," provides: "The [m]ayor or designee may terminate the employment of and discipline any employee of the [c]ity except as otherwise provided by the General Statutes, this [c]harter or collective bargaining agreement, where applicable."

was not unlawful. He argues that the city charter expressly confers the power to terminate an employee exclusively on the mayor or the mayor's designee. He further contends that the department head and the personnel director are not authorized by the agreement to terminate employment, but only to recommend termination and to approve the recommendation, respectively.

We note initially our standard of review. The plaintiff's claim involves interpretation of the city charter and the agreement. The interpretation of a city charter requires the application of principles of statutory construction and, therefore, presents a question of law, over which our review is plenary. See *Kelly* v. *New Haven*, 275 Conn. 580, 607, 881 A.2d 978 (2005). We interpret collective bargaining agreements guided by principles of contract law. *Poole* v. *Waterbury*, 266 Conn. 68, 87–88, 831 A.2d 211 (2003). "The intent of the parties as expressed in a contract is determined from the language used interpreted in the light of the situation of the parties and the circumstances connected with the transaction. . . . [T]he intent of the parties is to be ascertained by a fair and reasonable construction of the written words and . . . the language used must be accorded its common, natural, and ordinary meaning and usage where it can be sensibly applied to the subject matter of the contract. . . . Where the language of the contract is clear and unambiguous, the contract is to be given effect according to its terms. A court will not torture words to import ambiguity where the ordinary meaning leaves no room for ambiguity . . . . Similarly, any ambiguity in a contract must emanate from the language used in the contract rather than from one party's subjective perception of the terms. . . . [T]he mere fact that the parties advance different interpretations of the language in question does not necessitate a conclusion that the language is ambiguous. . . .

"[I]n construing contracts, we give effect to all the language included therein, as the law of contract interpretation . . . militates against interpreting a contract in a way that renders a provision superfluous. . . . If a contract is unambiguous within its four corners, intent of the parties is a question of law requiring plenary review. . . . When the language of a contract is ambiguous, the determination of the parties' intent is a question of fact, and the trial court's interpretation is subject to reversal on appeal only if it is clearly erroneous." (Citations omitted; internal quotation marks omitted.) *Honulik* v. *Greenwich*, 293 Conn. 698, 710–11, 980 A.2d 880 (2009). In the present case, the relevant language of the agreement is not ambiguous, and, therefore, our standard of review is plenary.

Our interpretation of the interplay between municipal charter provisions and collective bargaining agreements entered into by municipal employers and bargaining agents for certain municipal employees is controlled by the Municipal Employees Relations Act, General Statutes §§ 7-460 to 7-479 and, in particular, General Statutes § 7-474 (f).[4] That statutory section provides that, in the event of a conflict between any special act or charter provision and a collective bargaining agreement, the agreement will control.

At the center of the plaintiff's claim that his employment was terminated illegally is his argument that the authority to remove city employees rests solely in the office of the mayor. He maintains that "[t]here is no

---

[4] General Statutes § 7-474 (f) provides in relevant part: "Where there is a conflict between any agreement reached by a municipal employer and an employee organization and approved in accordance with the provisions of sections 7-467 to 7-477, inclusive, on matters appropriate to collective bargaining, as defined in said sections, and any charter, special act, ordinance, rules or regulations adopted by the municipal employer or its agents such as a personnel board or civil service commission . . . the terms of such agreement shall prevail . . . ."

conflict between the [c]harter and the [agreement] in accordance with [§] 7-474 (f) since they work in harmony: under the [agreement] the [department head] 'recommends' and the personnel director 'approves' while under the [c]harter the ultimate authority empowered to 'terminate' " is the mayor.

Section 5-6 of the city charter, titled "Removal and Discipline of Officials and Employees," provides in relevant part: "(b) Employees of the [c]ity. The [m]ayor or designee may terminate the employment of and discipline any employee of the [c]ity except as otherwise provided by the General Statutes, this [c]harter or collective bargaining agreement, where applicable. . . ." The plaintiff argues that this section "expressly confers [the] authority" to terminate an employee "only in the mayor or his designee." We do not read the charter language in the same manner as does the plaintiff. As the court recognized, the provision authorizes the mayor or the mayor's designee to terminate the employment of any employee, "except as otherwise provided by" the General Statutes, another provision of the charter or the agreement. Contrary to the plaintiff's contention, there is nothing in the language of the provision that limits the authority of termination to the mayor or the mayor's designee. Indeed, § 5-6 (b) of the charter itself references exceptions to such exclusive termination authority, recognizing instances where the agreement will control.

The plaintiff also contends that the agreement does not give the personnel director the authority to terminate the employment of an employee. Section 4.2 (B) of the agreement provides: "At any time during the initial probationary period, the [d]epartment [h]ead may recommend in writing to the [p]ersonnel [d]irector the removal of an employee, if in his/her opinion, the working test indicates that such employee is unable or unwilling to perform the duties of the position satisfactorily

or that his/her habits and dependability do not merit his/her continuance in the service. Such recommendation of the [d]epartment [h]ead and the reasons therefore shall be in writing to the [p]ersonnel [d]irector with a copy to the employee and to the [u]nion if it requests it. No employee shall be removed from a position during his/her probationary period without the approval of the [p]ersonnel [d]irector. The employee, if removed, shall not have any right to be restored to the eligibility list from which he/she was appointed."

The plaintiff argues that this section "permits the department head to 'recommend' the 'removal' of an employee to the personnel director, and the latter may make an 'approval' of the 'recommendation.' It does not authorize her to terminate an employee." We disagree with the plaintiff's interpretation of the provision. While the language of § 4.2 (B) of the agreement might have been drafted more explicitly, for example, to have stated that approval of the personnel director is tantamount to termination of an employee's employment, the language as it stands permits a reasonable inference that upon the recommendation of the department head, the personnel director may terminate a probationary employee by approving such recommendation. It clearly outlines a procedure where a department head "[a]t any time" during the probationary period may recommend to the personnel director "the removal" of an employee if he performs duties unsatisfactorily or his habits do not merit continuance in service. The provision then states that no such probationary employee may be removed from employment "without the approval of the [p]ersonnel [d]irector." The agreement contains no requirement that the mayor or any other city official take further action to effect the removal or discharge of such an employee. The final sentence indicates than any such employee "if removed" shall

forfeit any right to be restored to the eligibility list from which he was appointed.

In this case, the department head recommended the removal of the plaintiff, and the personnel director approved his recommendation. Pursuant to § 4.2 (B) of the agreement, no further action was necessary. The plaintiff was terminated from his employment. We conclude that the court properly concluded that the plaintiff was properly and effectively discharged.

The judgment is affirmed.

In this opinion the other judges concurred.