MARIA F. MCKEON *v.* WILLIAM P. LENNON
(AC 34709)

Beach, Bear and Lavery, Js.

Argued October 9—officially released December 31, 2013

*Maria F. McKeon*, self-represented, the appellant (plaintiff).

*Proloy K. Das*, with whom was *Debra C. Ruel*, for the appellee (defendant).

*Opinion*

BEAR, J. The plaintiff, Maria F. McKeon, appeals from the judgment of the trial court denying her motion to compel the defendant, William P. Lennon, to pay for one half of their now adult son Craig's auto insurance, pursuant to a postdissolution judgment stipulation. On appeal, the plaintiff claims that (1) the trial court erred in denying the motion to compel on the ground of ambiguity in the stipulation; (2) even if this court agrees with the trial court that the stipulation is ambiguous, this court still should reject the defendant's interpretation that the termination of the stipulation self-executed upon Craig's graduation from high school; and (3) the trial court erred in denying the motion to compel when the defendant had not filed a motion to modify. Although we disagree with the trial court as to the ambiguity of the stipulation, we nonetheless affirm the judgment of the trial court.[1]

The following facts and procedural history are relevant to the resolution of the present appeal. This matter previously was before this court in *McKeon v. Lennon*, 131 Conn. App. 585, 588, 27 A.3d 436, cert. denied, 303 Conn. 901, 31 A.3d 1178 (2011), which we cite for

---

[1] "[An appellate court] can sustain a right decision although it may have been placed on a wrong ground." (Internal quotation marks omitted.) *State v. Osuch*, 124 Conn. App. 572, 583, 5 A.3d 976, cert. denied, 299 Conn. 918, 10 A.3d 1052 (2010).

relevant facts: "The parties were married on August 29, 1981. During the course of their marriage, the parties had three children, none of whom had reached the age of majority by August 3, 2005, when the plaintiff initiated the action to dissolve the parties' marriage. Following a ten day trial, the court rendered judgment dissolving the parties' marriage on December 31, 2007. The court issued a wide range of orders in connection with the dissolution judgment, including, among other things, orders regarding the custody and care of the parties' minor children, the children's medical care and finances, the distribution of the parties' real and personal property, and the payment of child support and alimony as well as the parties' tax liabilities."

The parties subsequently entered into a postjudgment stipulation on September 2, 2009, in order to resolve certain postjudgment issues. One of these issues was the payment of automobile related expenses for their son Craig, who was born on November 19, 1991. We note that Craig was sixteen years old when the court rendered the dissolution judgment and seventeen years old when the parties entered into the stipulation.

The stipulation provides in relevant part: "In resolution of Defendant's Post-Judgment Motion for Contempt regarding 2007 Estimated Tax Payment (#312), the following orders shall enter:

"4.1 Defendant shall pay to Plaintiff one-half of Craig's auto insurance and one-half of the difference for insuring Plaintiff's automobile with and without Craig on the policy, provided that Plaintiff elects a $500 deductible for both Craig's policy and the policy covering her own vehicle.

"4.2 The parties agree to carry $500 deductibles on their respective auto insurance policies and further agree to equally share the $500 deductible if Craig has an accident or causes property damage to his car or

either of the parties' cars. Notwithstanding the foregoing, neither parent shall be prohibited from seeking reimbursement from Craig for his or her share of the deductible as he or she sees fit.

"4.3 As of September 2, 2009, Defendant's share of the above-outlined auto insurance expenses is $1,247.00, payable as set forth in Section 4.5 below.

"4.4 In resolution of Defendant's claim for estimated tax payments, the parties agree that Plaintiff owes Defendant $823.00 as reimbursement for Defendant's share of the joint 2007 first quarter estimated tax payment that was erroneously credited to Plaintiff by IRS, payable, as set forth in Section 4.5 below.

"4.5 In reconciliation of Sections 4.3 and 4.4 above, Defendant shall immediately pay to Plaintiff $424.00."[2]

The defendant stopped paying for one half of Craig's auto insurance in October, 2011; Craig was nineteen years old at that time. On January 30, 2012, the plaintiff filed a "Motion to Compel Re: Defendant's Refusal to Pay Car Insurance as Required by Stipulation Post-Judgment," in which she requested that the court order the defendant to comply with his obligation under the stipulation to pay for one half of Craig's auto insurance. She stated that the defendant was refusing to pay unless

---

[2] The dissolution judgment in turn provides in relevant part: "Children's car. The Jetta, or any successor automobile purchased by agreement of the parents, shall be put into the name of the [plaintiff] for use by the children for as long as either parent agrees to retain the automobile. If at any time both parents consider the automobile unnecessary, it will be sold and the proceeds equally split between the parents. The entire cost of the automobile insurance for the Jetta, or successor automobile, and any major repairs in excess of $150 agreed to in writing or by e-mail shall be equally split by the parents. The [plaintiff] shall pay any costs less than $150. A car shall be purchased for Craig when he turns [sixteen and one-half years old] for approximately the same amount that was spent for Kathleen [the parties' daughter]. The parties shall split the cost of the purchase and the costs, including maintenance, including gas, oil, taxes, etc. for the car as with Kathleen's car."

she "turn[ed] over legal title of the vehicle to Craig (which the court specifically ordered was to be titled in her name), as well as [went] through the process of registering the car and unregistering the car each time Craig [came] home from school to save a few dollars." She argued that the stipulation clearly and unambiguously requires the defendant to pay for one half of Craig's auto insurance without conditions and that the defendant should have taken legal action and not engaged in self-help in order to modify his obligation under the stipulation.

The court denied the motion without issuing a memorandum of decision on April 30, 2012. The plaintiff filed a motion for reconsideration and/or reargument on May 17, 2012, which the court denied on the same day. The plaintiff then filed the present appeal on June 4, 2012. On August 27, 2012, the plaintiff filed a motion for articulation, which the court granted in part on September 20, 2012. The court articulated in relevant part: "Here, the September 2, 2009 stipulation is ambiguous. The September 2, 2009 stipulation is silent as to when the defendant's obligation to pay one half of Craig's car insurance terminates. The court is unable to determine from the language of the stipulation whether the defendant's obligation is a onetime occurrence; whether it terminates upon Craig reaching the age of majority; or whether it terminates when Craig graduates from college. Surely, the defendant's obligation to pay one half of Craig's car insurance cannot be forever."

Before we address the plaintiff's claims, "[w]e initially set forth the well established standard of review and principles of law relevant to the plaintiff's appeal. The standard of review in family matters is well settled. An appellate court will not disturb a trial court's orders in domestic relations cases unless the court has abused its discretion or it is found that it could not reasonably conclude as it did, based on the facts presented. . . .

It is within the province of the trial court to find facts and draw proper inferences from the evidence presented. . . . In determining whether a trial court has abused its broad discretion in domestic relations matters, we allow every reasonable presumption in favor of the correctness of its action." (Internal quotation marks omitted.) *McKeon* v. *Lennon,* supra, 131 Conn. App. 597.

In domestic relations cases, "[a] judgment rendered in accordance with . . . a stipulation of the parties is to be regarded and construed as a contract. . . . Accordingly, [o]ur resolution of the [plaintiff's] claim is guided by the general principles governing the construction of contracts. A contract must be construed to effectuate the intent of the parties, which is determined from the language used interpreted in the light of the situation of the parties and the circumstances connected with the transaction." (Internal quotation marks omitted.) *Guaragno* v. *Guaragno,* 141 Conn. App. 337, 344, 61 A.3d 1119 (2013).

"[T]he intent of the parties is to be ascertained by a fair and reasonable construction of the written words and . . . the language used must be accorded its common, natural and ordinary meaning and usage where it can be sensibly applied to the subject matter of the contract. . . . Where the language of the contract is clear and unambiguous, the contract is to be given effect according to its terms. A court will not torture words to import ambiguity where the ordinary meaning leaves no room for ambiguity . . . . Similarly, any ambiguity in a contract must emanate from the language used in the contract rather than from one party's subjective perception of the terms. . . . [T]he mere fact that the parties advance different interpretations of the language in question does not necessitate a conclusion that the language is ambiguous. . . .

"[I]n construing contracts, we give effect to all the language included therein, as the law of contract interpretation . . . militates against interpreting a contract in a way that renders a provision superfluous. . . . If a contract is unambiguous within its four corners, intent of the parties is a question of law requiring plenary review. . . . When the language of a contract is ambiguous, the determination of the parties' intent is a question of fact, and the trial court's interpretation is subject to reversal on appeal only if it is clearly erroneous." (Internal quotation marks omitted.) *Prymas* v. *New Britain*, 122 Conn. App. 511, 517–18, 3 A.3d 86, cert. denied, 298 Conn. 915, 4 A.3d 833 (2010). "To identify and to apply the appropriate standard of review, we must, therefore, initially determine whether the agreement . . . was unambiguous." *Bijar* v. *Bijar*, 79 Conn. App. 752, 760, 831 A.2d 824 (2003).

I

In her first claim, the plaintiff asks us to hold that the court erred in denying her motion to compel on the ground of ambiguity in the stipulation provision, because the lack of an end date in the provision clearly and plainly indicates that the parties intended for the obligation to apply "until they decided to modify their agreement." The plaintiff further argues with respect to the court's finding of ambiguity that the court was required to determine the intent of the parties once it determined that the provision was ambiguous, but it did not do so and instead relied on the mere existence of ambiguity when it denied her motion. In her second claim, the plaintiff asks us ultimately to interpret the provision to provide that its termination did not self-execute upon Craig's graduation from high school, even if we initially agree with the court's interpretation of the provision as ambiguous. We conclude that the provision is unambiguous, insofar that we interpret its termination to be self-executing by operation of law, due to

its lack of language expressly addressing the parties' intent for the defendant's obligation to continue after Craig graduated from high school and its lack of reference to General Statutes § 46b-66.

"[C]ontract interpretation is subject to plenary review by this court . . . ." *Hopson* v. *Hopson,* 135 Conn. App. 690, 697, 42 A.3d 528 (2012). We begin our interpretation of the stipulation provision by considering § 46b-66, which provides in relevant part: "(a) In any case under this chapter where the parties have submitted to the court an agreement concerning the custody, care, education, visitation, maintenance or support of any of their children or concerning alimony or the disposition of property, the court shall inquire into the financial resources and actual needs of the spouses and their respective fitness to have physical custody of or rights of visitation with any minor child, in order to determine whether the agreement of the spouses is fair and equitable under all the circumstances. If the court finds the agreement fair and equitable, it shall become part of the court file, and if the agreement is in writing, it shall be incorporated by reference into the order or decree of the court. If the court finds the agreement is not fair and equitable, it shall make such orders as to finances and custody as the circumstances require. *If the agreement is in writing and provides for the care, education, maintenance or support of a child beyond the age of eighteen, it may also be incorporated or otherwise made a part of any such order and shall be enforceable to the same extent as any other provision of such order or decree, notwithstanding the provisions of section 1-1d. (b) Agreements providing for the care, education, maintenance or support of a child beyond the age of eighteen entered into on or after July 1, 2001, shall be modifiable to the same extent as any other provision of any order or decree in accordance with section 46b-86.*" (Emphasis added.)

Section 46b-66 modifies our general rule that "[t]he obligation of a parent to support a child terminates when the child attains the age of majority, which, in this state, is eighteen. . . . The statutory grant of jurisdiction to the Superior Court in matters relating to child support incident to the dissolution of a marriage likewise expressly circumscribes the court's jurisdiction to orders involving only minor children. . . . In the absence of a statute or agreement providing for postmajority assistance . . . a parent ordinarily is under no legal obligation to support an adult child." (Citations omitted; footnotes omitted; internal quotation marks omitted.) *Loughlin* v. *Loughlin*, 93 Conn. App. 618, 635–36, 889 A.2d 902, aff'd, 280 Conn. 632, 910 A.2d 963 (2006).[3]

Stated another way, "[a] child support order may not extend beyond the child's age of majority unless the parties *expressly* agree to the contrary." (Emphasis added.) *Passamano* v. *Passamano*, 228 Conn. 85, 88 n.2, 634 A.2d 891 (1993). "It is now axiomatic that support for a minor child extends to age eighteen only . . . ." (Internal quotation marks omitted.) *Lowe* v. *Lowe*, 47 Conn. App. 354, 357, 704 A.2d 236 (1997). "The legislature amended . . . § 46b-66 . . . in order to provide for the support of postmajority children only if there is an agreement to do so and if it is in writing. . . . The language of the statute is clear and unambiguous and we cannot by our construction substitute other words for the words in writing. . . . Absent . . . a written agreement by the parties, the court does not

---

[3] General Statutes § 46b-84 (b) provides: "If there is an unmarried child of the marriage who has attained the age of eighteen and is a full-time high school student, the parents shall maintain the child according to their respective abilities if the child is in need of maintenance until such child completes the twelfth grade or attains the age of nineteen, whichever occurs first. The provisions of this subsection shall apply only in cases where the decree of dissolution of marriage, legal separation or annulment is entered on or after July 1, 1994."

have jurisdiction to order payment of child support beyond the age of majority and may not enforce such an order." (Citations omitted; internal quotation marks omitted.) Id.; see also *Bock* v. *Bock*, 127 Conn. App. 553, 559–60, 14 A.3d 479 (2011) (rejecting argument that court had subject matter jurisdiction over written post-majority educational support agreements under § 46b-66, where there was "no mention of § 46b-66" and no "evidence that the agreements were entered into pursuant to § 46b-66").

The language of the stipulation provision does not expressly state that the defendant's obligation under the provision would continue after Craig reached the age of majority. In fact, the language of the provision is wholly silent on the issue of its duration. The plaintiff argues that the provision nonetheless is clear and unambiguous about its duration because "[t]he lack of an 'end date' clearly indicates that the parties intended to pay the auto insurance until they decided to modify their agreement. Had the defendant wanted to specify an end date, he would have had his able counsel . . . put it in the stipulation as was done for the life insurance provisions." Stated another way, the plaintiff asks us to interpret the provision as unambiguous by implying its duration from the absence of express language specifying its duration. We decline to interpret the provision in the manner advocated by the plaintiff. "It is hornbook law that courts do not rewrite contracts for parties. . . . Put another way, [a] court cannot simply disregard the words used by the parties or revise, add to, or create a new agreement." (Citation omitted; internal quotation marks omitted.) *Nassra* v. *Nassra*, 139 Conn. App. 661, 669, 56 A.3d 970 (2012).

"A court will not torture words to import ambiguity where the ordinary meaning leaves no room for ambiguity . . . ." (Internal quotation marks omitted.) *Prymas* v. *New Britain*, supra, 122 Conn. App. 517. The absence

in the provision of any reference to § 46b-66 and any express written agreement for the defendant's obligation to continue after Craig graduated from high school leaves no room for this court to conclude that the parties may have intended to provide postmajority support to Craig in the form of continued auto insurance payments, given our clear, strict standards for the drafting of postmajority support agreements. We accordingly conclude that the provision is unambiguous, insofar that we interpret its termination to be self-executing by operation of law. Even though we interpret the provision differently than did the trial court, we nonetheless conclude that the court correctly denied the plaintiff's motion to compel, because the defendant could not be compelled to perform his obligation under the provision, the termination of which self-executed by operation of law upon Craig's graduation from high school after the age of eighteen and before the age of nineteen. See General Statutes § 46b-84 (b).[4]

## II

We next consider the plaintiff's claim that the court erred because it should not even have interpreted the stipulation, let alone denied her motion to compel, where the defendant used self-help instead of filing a motion to modify in order to end his payment obligation under the stipulation. We are not persuaded.

The plaintiff relies primarily on the proposition that "the rule [is] that [a]n order of the court must be obeyed until it has been modified or successfully challenged." (Internal quotation marks omitted.) *Sablosky* v. *Sablosky*, 258 Conn. 713, 719, 784 A.2d 890 (2001). Indeed, this court and our Supreme Court previously have determined that a party's decision to use self-help instead of judicial resources to modify an obligation under a judgment in a family matter could be a basis

---

[4] See footnote 3 of this opinion.

for granting a motion for contempt against that party: "[W]here there is an ambiguous term in a judgment, a party must seek a clarification upon motion rather than resort to self-help. The appropriate remedy for doubt about the meaning of a judgment is to seek a judicial resolution of any ambiguity; it is not to resort to self-help." Id., 720; see id., 716–17 (defendant stopped paying postmajority educational support because of differing interpretation of "while they are undergraduate college students" qualifier in agreement); accord *Eldridge* v. *Eldridge*, 244 Conn. 523, 529–32, 710 A.2d 757 (1998) (plaintiff stopped paying alimony and child support after he learned defendant had not told him that she had been earning more than $25,000 per year for seven years, because plaintiff believed he had overpaid under agreement provision with formula by which plaintiff could reduce such payments when defendant earned at least $25,000 per year); *Behrns* v. *Behrns*, 80 Conn. App. 286, 288–92, 835 A.2d 68 (2003) (defendant stopped paying alimony and child support under belief that his lack of employment allowed him to do so, pursuant to mathematical formula in agreement that provided for adjustments of such payments in accordance with changes in cost of living as measured by consumer price index or his salary and wages), cert. denied, 267 Conn. 914, 840 A.2d 1173 (2004).

The plaintiff ignores, however, how our Supreme Court has qualified "the rule that [a]n order of the court must be obeyed until it has been modified or successfully challenged." (Internal quotation marks omitted.) *Sablosky* v. *Sablosky*, supra, 258 Conn. 719. Specifically, in *Eldridge* v. *Eldridge*, supra, 244 Conn. 530, our Supreme Court stated the aforementioned rule, but then noted: "It is true that there may be some orders that are self-executing, either by their terms ('the plaintiff shall pay to the defendant as child support for each child

the sum of $15,000 per year until the child's eighteenth birthday when said support shall cease') or by operation of law (terminating alimony upon remarriage). This case does not, however, involve such an order."

According to the defendant, however, the present case does involve such a self-executing order. The defendant contends that the stipulation provision now lacks legal effect as Craig has graduated from high school, and there is no express statement in the provision that the defendant's obligation to pay for one half of Craig's auto insurance would continue after Craig graduated from high school. Because we agree with the defendant's position that the termination of his obligation under the provision self-executed by operation of law; see General Statutes § 46b-84 (b); *Loughlin* v. *Loughlin*, supra, 93 Conn. App. 635–36; we conclude that he was not required first to seek an order of termination from the court before he stopped paying for one half of Craig's auto insurance in October, 2011, almost one and one-half years after Craig graduated from high school.

"It is a rare case in which a disappointed litigant will be able to demonstrate abuse of a trial court's broad discretion in family matters." (Internal quotation marks omitted.) *Blake* v. *Blake*, 207 Conn. 217, 226, 541 A.2d 1201 (1988). The present case is not one of those rare cases. For the aforementioned reasons, although we disagree with the court's holding that the stipulation was ambiguous, we nonetheless conclude that the court did not abuse its broad discretion in denying the plaintiff's motion to compel because it was required to do so as a matter of law.

The judgment is affirmed.

In this opinion the other judges concurred.