******************************************************

The ''officially released'' date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the ''officially released'' date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

# RUDOLPH J. FIORILLO ET AL. *v.* CITY OF HARTFORD
## (AC 42998)

Prescott, Alexander and Suarez, Js.

*Syllabus*

The plaintiffs, retired city firefighters, filed a motion for contempt alleging that the defendant city had violated a judgment of the trial court incorporating a settlement agreement in which the defendant had agreed to provide a health benefits package administered by A Co., and that the package would not change without the plaintiffs' written consent or a legislative mandate. The defendant thereafter replaced the plan administered by A Co. with a health insurance plan administered by C Co. and a prescription drug plan administered by V Co. The plaintiffs claimed that, by making this change, the defendant had diminished the health insurance benefits to which they were entitled pursuant to a collective bargaining agreement. Following a hearing on the contempt motion, the trial court concluded that the agreement was clear and unambiguous and that the defendant violated the judgment by changing the plaintiffs' health insurance plan administrators without their written consent. The court, however, denied the motion for contempt because all of the claims submitted by the plaintiffs under the C Co. plan were paid in a manner identical to the A Co. plan and, therefore, the court concluded that the defendant had not wilfully violated the judgment. On the plaintiffs' appeal and the defendant's cross appeal to this court, *held* that the trial court properly denied the plaintiff's motion for contempt: this court concluded that the trial court incorrectly determined that the defendant violated the agreement by changing the third-party administrators because the reference to the A Co. plan in the agreement was used to establish the health-care benefits to which the plaintiffs were entitled, the agreement did not state that a specific third party must administer those benefits in perpetuity, the defendant's agreement that it would not change or diminish the benefits that comprised the entire health-care package did not extend to the question of which entity would operate as a third-party administrator, and nothing in the agreement suggested that the parties intended to permanently establish a third-party administrator, accordingly, because the substance of the health-care package was not changed or diminished, the defendant could not be said to have violated the agreement and, therefore, there was no basis for a finding of contempt.

Argued September 16, 2021—officially released May 10, 2022

*Procedural History*

Action to recover damages for breach of contract, and for other relief, brought to the Superior Court in the judicial district of Hartford and transferred to the judicial district of New Britain, Complex Litigation Docket; thereafter, the court, *Cohn, J.*, rendered judgment in accordance with the parties' settlement agreement; subsequently, the court, *Hon. Henry S. Cohn*, judge trial referee, denied the motion for contempt filed by the named plaintiff et al., and the named plaintiff et al. appealed and the defendant cross appealed to this court. *Affirmed.*

*Robert J. Williams, Jr.*, for the appellants-cross appellees (named plaintiff et al.).

*Alexandra Lombardi*, deputy corporation counsel, with whom, on the brief, was *Demar Osbourne*, assis-

tant corporation counsel, for the appellee-cross appellant (defendant).

*Opinion*

ALEXANDER, J. This appeal and cross appeal have their origin in a breach of contract action commenced in 1999 by a group of retired Hartford firefighters (original plaintiffs) regarding their health insurance benefits. The parties reached a settlement agreement in 2003 in which the defendant, the city of Hartford, agreed to provide the original plaintiffs with a health benefits package that included medical, prescription drug, and dental benefits listed in a plan from Anthem Blue Cross Blue Shield (Anthem). The agreement provides that this package would not change without the plaintiffs' written consent or a legislative mandate. The trial court, *Cohn, J.*, incorporated this settlement agreement into its July 15, 2003 judgment. In 2017, the plaintiffs[1] filed a motion for contempt, alleging that the defendant had violated the court's judgment by replacing and/or changing the health benefits package administered by Anthem to a Cigna administered health insurance plan and by altering the prescription drug plan. The plaintiffs alleged that these changes occurred without their written consent.

On January 24, 2019, the court determined that the defendant had violated the 2003 judgment by changing the health insurance plan administrator from Anthem to Cigna and the prescription drug plan administrator from Anthem to CVS. In its May 14, 2019 order, the court found, however, that the defendant was not in contempt because the evidence demonstrated that all of the insurance claims of the plaintiffs made under the Cigna plan had been paid in a manner identical to the Anthem plan and, therefore, that the defendant had not wilfully violated the 2003 judgment. The plaintiffs appealed and the defendant cross appealed.

On appeal, the plaintiffs claim that the court (1) improperly denied their motion for contempt and (2) effectively amended the 2003 judgment by incorporating the protocols submitted by the defendant.[2] In its cross appeal, the defendant contends that the court incorrectly determined that it violated the 2003 judgment. We agree with the claim raised in the defendant's cross appeal and conclude that the court incorrectly determined that it violated the 2003 agreement. In the absence of a violation of the settlement agreement, there was no basis for a finding of contempt. As a result of this conclusion, we need not address the claims raised in the plaintiffs' appeal, and affirm the judgment denying the motion for contempt.[3]

The record reveals the following facts and procedural history. On February 3, 1999, the original plaintiffs, a group of Hartford firefighters[4] who had retired from their employment with the defendant on or after January 1, 1993, commenced the present action. The complaint alleged that, prior to retiring, each of the original

plaintiffs was a member of Local 760, International Association of Firefighters, AFL-CIO, CLC (union). The union and the defendant were parties to a collective bargaining agreement.[5] The original plaintiffs claimed that they were entitled to certain health care benefits upon retirement pursuant to their collective bargaining agreement. They further alleged that the defendant violated the collective bargaining agreement by substituting, modifying and reducing their insurance benefits and coverages. The original plaintiffs sought a restoration of these health care benefits. In count two of the complaint, the original plaintiffs claimed that the defendant "substituted, modified and diminished health insurance benefits" on three additional occasions.

In 2003, the parties executed a settlement agreement, dated June 15, 2003, in order to resolve the 1999 action. Paragraph 2 of the settlement agreement requires the defendant to provide the original plaintiffs with certain medical benefits designated as "the Anthem Blue Cross Blue Shield Century Preferred with Point of Service RX Rider (the rider for a prescription drug card) as presently in place for Group Policy Number 000675-129 and the Full Service Dental Plan, Number 000671-126, including Riders A, B, C, D, and E [Anthem plan]. Said benefits, shall hereinafter be referred to as the 'entire health insurance package' and shall be deemed to be the entire health insurance package in effect at the . . . date of retirement." A copy of the entire health insurance package was attached and made part of the settlement agreement.

The settlement agreement stated that, for those retired firefighters who had reached the age of fifty-five, the defendant would provide the entire health care package at no cost. Upon reaching the age of sixty-five, the following occurred: "(A) In the event the [retired firefighter], his/her spouse, or a surviving spouse is eligible for Medicare Plans A and B, each of them will continue to receive the entire health insurance package, in a 'carve out.' There will be a coordination of benefits between it and Medicare (a [M]edicare 'carve out'). (B) In the event the [retired firefighter], his/her spouse, or a surviving spouse is not eligible for Medicare Plans, each of them will continue to receive the entire health insurance package."

Paragraph 5 of the settlement agreement provides: "Except for the automatic inclusion of legislative mandates, the [defendant] agrees that it will not change or diminish in any way the entire health insurance package contained herein without the written consent of the [retired firefighter] or surviving spouse provided however, the plan is permitted to change for purposes of inclusion of new and improved medical procedures and medical procedures that replace obsolete medical procedures without the written consent of the [retired firefighter] or surviving spouse." On July 15, 2003, the court,

following the parties' joint motion, incorporated the settlement agreement into its judgment.

On January 23, 2017, the plaintiffs filed a motion for contempt. In that motion, they alleged that, without their written consent, the defendant unilaterally had replaced and/or changed the Anthem plan with a Cigna insurance plan (Cigna plan). The plaintiffs claimed that the switch to the Cigna plan diminished the benefits to which they were entitled. The plaintiffs further claimed that the defendant unilaterally had altered the prescription drug plan, which resulted in a diminishment of the benefits of their entire health insurance package. The plaintiffs requested that the defendant be "cited to show cause why it should not be adjudged in contempt for the violation and punished therefore." The plaintiffs also specifically requested that the defendant be compelled to reinstate the Anthem plan, including the prescription drug program, or, in the alternative, to provide them with a health insurance package that was the equivalent to the Anthem plan, subject to their written consent.

Judge Cohn held a hearing on October 22 and October 23, 2018. The named plaintiff, Rudolph J. Fiorillo, Jr., testified that following his retirement in 1994, a dispute arose with the defendant regarding his health insurance benefits. As a result, he and others filed a lawsuit in 1999. In 2003, the parties entered into the settlement agreement to resolve the dispute. Fiorillo testified regarding his involvement in the drafting of the settlement agreement and his understanding of the specific wording used in the agreement.

Richard Pokorski, the defendant's benefits administrator, testified that the defendant was a self-insured entity. Accordingly, the defendant ultimately bore the financial responsibility for all of the medical, dental and prescription medication costs of the plaintiffs for claims covered by the entire health insurance package. Pokorski testified that the defendant utilized insurance carriers, such as Anthem or Cigna, as third-party administrators for their contracts with health-care providers and to facilitate the various payments. Pokorski further testified that he was part of a committee that made a recommendation to the defendant's city council and mayor to switch from Anthem to Cigna in order to save money with regard to its health-care costs. This recommendation was endorsed and executed by the defendant's city council and mayor.

On January 24, 2019, the court issued a memorandum of decision in which it set forth and applied the analytical framework for a contempt determination. See, e.g., *In re Leah S.*, 284 Conn. 685, 693–94, 935 A.2d 1021 (2007). The court determined that the defendant had violated the clear and unambiguous language of paragraphs 2 and 5 of the settlement agreement, which had been incorporated into the 2003 judgment, by changing

from the Anthem plan to the Cigna and CVS plans. The court specifically noted that the plaintiffs did not provide written consent to these changes. With respect to the second part of the contempt inquiry, including a consideration of whether the violations were wilful or excused by a good faith dispute or misunderstanding; see id., 694; the court noted that "[t]he determination of contempt thus depends on evidence on whether the Cigna plan is factually identical to the replaced Anthem plan. The [defendant] may also introduce evidence to show that it has taken sufficient steps to resolve any conflicts between the Anthem and Cigna policy terms. The plaintiffs may rebut the [defendant's] claims with their own evidence." The court then continued the hearing for further proceedings on May 13 and 14, 2019. After the subsequent proceedings, the court issued a second memorandum of decision. In that decision, the court noted that the defendant had represented that written protocols had been established to handle the plaintiffs' claims regarding the change from the Anthem plan to the Cigna plan. The defendant submitted these written protocols to the court.[6]

The written protocols provided that, in the event that one of the plaintiffs believed that a medical or prescription drug benefit had been denied improperly, or covered at an incorrect cost, the member could contact the defendant's benefit coordinator. With respect to medical and dental claims, the defendant's benefit coordinator would contact Cigna to ensure that the claim was processed correctly pursuant to Cigna's policies, and, if not, to correct any such error. If the claim was processed properly, the defendant's benefit coordinator would investigate and determine if the benefit previously was covered by Anthem and at what cost to that plaintiff. The written protocols specifically stated: "If [the defendant's benefit coordinator] learns that Cigna processed the claim inconsistently with how Anthem processed the claim previously, [the defendant's benefit coordinator] notifies [Cigna] . . . to have the claim reprocessed. Additionally, [the defendant's benefit coordinator] insists that Cigna complete an audit to learn whether any other similar past claims from anyone in the [plaintiffs'] group were processed incorrectly and, if so, to have them reprocessed correctly as well. Finally, the Cigna system is updated so that future claims of like kind will process correctly." The defendant's benefit coordinator would then inform the member of the plaintiffs of the adjustment.[7] A similar process was used for disputes with CVS regarding prescription drugs. The written protocols also set forth a time frame of five to ten business days for the defendant to issue a final response for medical claim disputes and three to five business days for prescription drug claim disputes.

The plaintiffs did not dispute the accuracy of the steps taken by the defendant with respect to the change,

and the evidence established that all claims had been paid in identical fashion to the Anthem plan. Accordingly, the court determined that the defendant had not wilfully failed to comply with the 2003 judgment and, therefore, found that the defendant was not in contempt.[8] This appeal and cross appeal followed. Additional facts will be set forth as necessary.

Before addressing the specific claims and arguments of the parties, we first identify and set forth certain legal principles that guide and inform our analysis. We begin with those factors associated with a motion for contempt. "Contempt is a disobedience to the rules and orders of a court which has power to punish for such an offense." (Internal quotation marks omitted.) *Puff* v. *Puff*, 334 Conn. 341, 364, 222 A.3d 493 (2020). In the present case, the plaintiffs have set forth allegations of indirect, civil contempt. See, e.g., *Wethersfield* v. *PR Arrow, LLC*, 187 Conn. App. 604, 653 n.39, 203 A.3d 645 (indirect contempt involves conduct occurring outside of court's presence), cert. denied, 331 Conn. 907, 202 A.3d 1022 (2019); *Quaranta* v. *Cooley*, 130 Conn. App. 835, 841–42, 26 A.3d 643 (2011) (civil contempt is conduct directed against rights of opposing party and punishment is wholly remedial, serves only purposes of complainant and is not intended as deterrent to offenses against public); see generally *Edmond* v. *Foisey*, 111 Conn. App. 760, 769, 961 A.2d 441 (2008).

"[O]ur analysis of a judgment of contempt consists of two levels of inquiry. First, we must resolve the threshold question of whether the underlying order constituted a court order that was sufficiently clear and unambiguous so as to support a judgment of contempt. . . . This is a legal inquiry subject to de novo review. . . . Second, if we conclude that the underlying court order was sufficiently clear and unambiguous, we must then determine whether the trial court abused its discretion in issuing, or refusing to issue, a judgment of contempt, which includes a review of the trial court's determination of whether the violation was wilful or excused by a good faith dispute or misunderstanding. . . . A finding of indirect civil contempt must be supported by clear and convincing evidence. . . . [A] contempt finding is not automatic and depends on the facts and circumstances underlying it." (Internal quotation marks omitted.) *Scalora* v. *Scalora*, 189 Conn. App. 703, 726–27, 209 A.3d 1 (2019); see also *Bolat* v. *Bolat*, 182 Conn. App. 468, 479–80, 190 A.3d 96 (2018).

Next, we consider the principles related to the interpretation of a settlement agreement that has been incorporated into a judgment of the court. "Because a stipulated judgment is in essence a contract . . . we interpret the stipulated judgment at issue . . . according to general principles governing the construction of contracts." (Citation omitted.) *Awdziewicz* v. *Meriden*, 317 Conn. 122, 129, 115 A.3d 1084 (2015); see

also *Barnard* v. *Barnard*, 214 Conn. 99, 109, 570 A.2d 690 (1990); *McCarthy* v. *Chromium Process Co.*, 127 Conn. App. 324, 329, 13 A.3d 715 (2011).[9]

"A contract must be construed to effectuate the intent of the parties, which is determined from the language used interpreted in the light of the situation of the parties and the circumstances connected with the transaction. . . . [T]he intent of the parties is to be ascertained by a fair and reasonable construction of the written words and . . . the language used must be accorded its common, natural and ordinary meaning and usage where it can be sensibly applied to the subject matter of the contract. . . . Where the language of the contract is clear and unambiguous, the contract is to be given effect according to its terms. . . . Although ordinarily the question of contract interpretation, being a question of the parties' intent, is a question of fact . . . [when] there is definitive contract language, the determination of what the parties intended by their . . . commitments is a question of law [over which our review is plenary]. . . .

"The determination as to whether language of a contract is plain and unambiguous is a question of law subject to plenary review. . . . A court will not torture words to import ambiguity where the ordinary meaning leaves no room for ambiguity . . . . Similarly, any ambiguity in a contract must emanate from the language used in the contract rather than from one party's subjective perception of the terms." (Citations omitted; internal quotation marks omitted.) *Brochard* v. *Brochard*, 185 Conn. App. 204, 219–20, 196 A.3d 1171 (2018); see also *Connecticut National Bank* v. *Rehab Associates*, 300 Conn. 314, 318–19, 12 A.3d 995 (2011).

In the present case, the court concluded that the agreement was clear and unambiguous and that the defendant had violated paragraphs 2 and 5 of the agreement when it changed the plaintiffs' health benefits administrators from Anthem to Cigna and CVS without the written consent of the plaintiffs. Our resolution of the appeal and cross appeal requires us to address both of these conclusions.

With respect to the issue of whether the language of the settlement agreement was clear and unambiguous, we note that Fiorillo testified that he had been involved in the drafting of the agreement. He then discussed the intent behind the specific wording used in the settlement agreement and his understanding of that language. Specifically, Fiorillo stated that the language selected meant that Anthem could not be replaced with another plan without the plaintiffs' consent. The defendant's counsel objected to this evidence only on the grounds of lack of foundation and the use of leading questions.

Fiorillo's testimony regarding his involvement and subjective intent with respect to the drafting and mean-

ing of the settlement agreement constituted parol evidence. "The parol evidence rule is premised upon the idea that when the parties have deliberately put their engagements into writing, in such terms as import a legal obligation, without . . . object or extent of such engagement, it is conclusively presumed, that the whole engagement of the parties, and the extent and manner of their understanding, was reduced to writing. After this, to permit oral testimony, or prior or contemporaneous conversation, or circumstances, or usages [etc.], in order to learn what was intended, or to contradict what is written, would be dangerous and unjust in the extreme. . . . The parol evidence rule does not of itself, therefore, forbid the presentation of parol evidence, that is, evidence outside the four corners of the contract concerning matters governed by an integrated contract, but forbids only the use of such evidence to vary or contradict the terms of such a contract. . . . Parol evidence offered solely to vary or contradict the written terms of an integrated contract is, therefore, legally irrelevant. When offered for that purpose, it is inadmissible not because it is parol evidence, but because it is irrelevant." (Citation omitted; internal quotation marks omitted.) *Medical Device Solutions, LLC* v. *Aferzon*, 207 Conn. App. 707, 728, 264 A.3d 130, cert. denied, 340 Conn. 911, 264 A.3d 94 (2021).

It is well established in our law that "parol evidence is not admissible where the agreement is clear and unambiguous. *HLO Land Ownership Associates Ltd. Partnership* v. *Hartford*, 248 Conn. 350, 357–58, 727 A.2d 1260 (1999). Only if the agreement is ambiguous may parol evidence be admitted, and then only if such evidence does not vary or contradict the terms of the contract." (Internal quotation marks omitted.) *Grogan* v. *Penza*, 194 Conn. App. 72, 98 n.6, 220 A.3d 147 (2019) (*Bright, J.*, concurring in part and dissenting in part); see generally *Leonetti* v. *MacDermid, Inc.*, 310 Conn. 195, 211, 76 A.3d 168 (2013).

In their respective briefs on appeal, both parties take the position that the terms of the settlement agreement are clear and unambiguous. At oral argument before this court, the plaintiffs' counsel claimed, however, that the court found the agreement to be ambiguous as evidenced by the admission of parol evidence when it permitted Fiorillo to testify about the intent of the parties during the drafting of the settlement agreement. The plaintiffs' counsel further stated that an ambiguity existed because the parties disagreed as to whether the defendant could replace Anthem with Cigna as the third-party administrator. The defendant's counsel maintained that the agreement was clear and unambiguous. During rebuttal argument, the plaintiffs' counsel then returned to his original position and stated that the court had concluded that the agreement was clear and unambiguous.

The trial court expressly found the settlement agreement to be clear and unambiguous. The argument of the plaintiffs' counsel with respect to Fiorillo's testimony regarding the parties' intent and Fiorillo's understanding of the meaning of the settlement agreement is, therefore, misplaced. The fact that Fiorillo testified as to the intent of the parties, without a specific objection from the defendant's counsel, did not constitute a determination of ambiguity, express or implied, by the trial court. We emphasize that the parties' advancement of different interpretations does not necessitate a conclusion of ambiguous contract language. See *Konover* v. *Kolakowski*, 186 Conn. App. 706, 714, 200 A.3d 1177 (2018), cert. denied, 330 Conn. 970, 200 A.3d 1151 (2019).[10] Finally, there is nothing to suggest or indicate that the trial court used, in any way, the portions of Fiorillo's testimony that consisted of inadmissible parol evidence in rendering its decisions, and we will not assume that the trial court improperly used such evidence. "In Connecticut, our appellate courts do not presume error on the part of the trial court." (Internal quotation marks omitted.) *Jalbert* v. *Mulligan*, 153 Conn. App. 124, 145, 101 A.3d 279, cert. denied, 315 Conn. 901, 104 A.3d 107 (2014). For these reasons, we conclude that the trial court correctly determined that the settlement agreement was clear and unambiguous.

Next, we consider whether the defendant violated the terms of the settlement agreement. We iterate the relevant language from the settlement agreement. Paragraph 2 provides: "The [plaintiffs'] current medical benefits will be replaced with the Anthem Blue Cross Blue Shield Preferred with Point of Service RX Rider (the rider for a prescription drug card) as presently in place for Group Policy Number 000675-129 and the Full Service Dental Plan, Number 000671-126, including Riders A, B, C, D, and E. *Said benefits . . . shall be deemed to be the entire health [care] package* in effect at the [plaintiffs'] date of retirement." (Emphasis added.) Paragraph 5 of the agreement provides: "Except for the automatic inclusion of legislative mandates, the [defendant] agrees that it will not change or diminish in any way the entire health insurance package contained herein without the written consent of the [plaintiffs] . . . ."

The trial court concluded that the change from the Anthem plan to the Cigna and CVS plans constituted a change to the health insurance package contained in the settlement agreement and that, in the absence of written consent, this constituted a violation of the agreement incorporated into the court's 2003 judgment. We disagree with this conclusion of the trial court.

We emphasize that "[t]*he intent of the parties as expressed in a contract is determined from the language used interpreted in the light of the situation of the parties and the circumstances connected with the*

*transaction*. . . . [T]he intent of the parties is to be ascertained by a fair and reasonable construction of the written words and . . . the language used must be accorded its common, natural, and ordinary meaning and usage *where it can be sensibly applied to the subject matter of the contract*." (Emphasis added; internal quotation marks omitted.) *Prymas* v. *New Britain*, 122 Conn. App. 511, 517, 3 A.3d 86, cert. denied, 298 Conn. 915, 4 A.3d 833 (2010); see also *Barnard* v. *Barnard*, supra, 214 Conn. 109–10 (intention of parties is determined from language used interpreted in light of situation of parties and circumstances connected with transaction and not intention that existed in minds of parties); *Liberty Transportation, Inc.* v. *Massachusetts Bay Ins. Co.*, 189 Conn. App. 595, 603–604, 208 A.3d 330 (2019) (contractual language given rational construction based on its common and ordinary meaning as applied to subject matter). Furthermore, we presume that the parties to a contract did not intend to create an absurd result. *Grogan* v. *Penza*, supra, 194 Conn. App. 79, 220 A.3d 147 (2019).

In 1999, the original plaintiffs claimed that the defendant improperly had diminished the health insurance benefits to which they were entitled pursuant to a collective bargaining agreement. The original plaintiffs and the defendant entered into a settlement agreement to resolve the dispute and this agreement was incorporated into the 2003 judgment of the court. The reference to the Anthem plan in the settlement agreement was used to establish the specific health care *benefits* to which the original plaintiffs were entitled. In other words, it constituted a reference to the place where a description of the specific benefits afforded to the original plaintiffs could be found. The agreement does not state that a specific third party must administer those benefits.

Following the settlement, the original plaintiffs were entitled to the medical and prescription drug insurance benefits contained in the Anthem plan designated 000675-129 with the point of service RX rider. Those benefits, coupled with the dental benefits set forth in the plan designated 000671-126, including Riders A, B, C, D, and E, comprised the "entire health insurance package" to which the original plaintiffs were entitled, effective August 1, 2003.

On the basis of the clear and unambiguous language used by the parties, we conclude that the settlement agreement intended to establish the particular medical, prescription drug and dental benefits to which the original plaintiffs are entitled but did not include a requirement that Anthem act as the third-party administrator in perpetuity. The defendant agreed that it would not change or diminish in any way the benefits that comprised the entire health care package without the written consent of the plaintiffs. The defendant's agreement

to not change or diminish the benefits that comprised the entire health care package, however, did not extend to which entity operates as the third-party administrator over the entire health care package. Rather, the defendant was required to provide the original plaintiffs with the benefits set forth and identified in the Anthem plan as of August 1, 2003.

The situation of the parties and the circumstances concerning the resolution of the 1999 action support our determination of the parties' intent. See, e.g., *Prymas* v. *New Britain*, supra, 122 Conn. App. 517. The original plaintiffs had alleged that the defendant diminished their benefits and coverages in violation of an existing collective bargaining agreement and sought a restoration of the health care benefits. There is nothing in the settlement agreement to suggest that the parties intended to permanently establish a specific third-party administrator. As previously noted, the defendant ultimately bore the responsibility for the payment of these medical, prescription drug and dental benefits. An absurd result would ensue if the settlement agreement was interpreted to require the defendant to remain bound forever to Anthem, even if that company elected to raise the costs to an unconscionable amount, or to prevent the defendant from changing to another third-party administrator that offered a better health insurance package at a lower cost. Likewise, a similar absurd result would occur if Anthem were to change its name or merge with another company, thereby relieving the defendant of its obligation to provide medical insurance benefits to this group, in the absence of additional, and possibly unsuccessful, legal proceedings. See, e.g., *Grogan* v. *Penza*, supra, 194 Conn. App. 79. For these reasons, we decline to interpret the language used in the agreement in the manner advanced by the plaintiffs. Instead, we conclude that, if the substance of the entire health care package, i.e., the medical, prescription drug, and dental benefits identified in the Anthem plan, is not changed or diminished in any way, then the defendant cannot be said to have violated the settlement agreement. The trial court, therefore, incorrectly determined that the change from the Anthem plan to the Cigna and CVS plans constituted a violation of the agreement. Nevertheless, the court properly denied the plaintiffs' motion because, in the absence of a violation of the settlement agreement, there was no basis for a finding of contempt.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] The plaintiffs who filed the motion for contempt were: Rudolph J. Fiorillo, Jr., Frederick E. Arnold, Ronald A. Beaucar, Wayne J. Bindas, Paul N. Brown, Frederick A. Caserta, Frank Casto, Kent A. Cavanaugh, Pete J. Coffey, Earl M. Cowell, Michelle Delaney, Stephen T. Donovan, Romeo H. Dube, Elaine J. Garrahy, William G. Graugard, Timothy F. Kelliher, Allan L. Lawrence, Joseph A. Michaud, Donald Moreau, Robert Neddo, Thomas O'Meara, Thomas Panella, Robert A. Pichette, Donald R. Rapoza, George M. Schreindorfer, Martin Scovill, Christopher M. Sears, Patrick C. Slattery, Kevin S.

Sullivan, Garbriele P. Valente, Robert J. Williams, Sr., James G. Wisner, and their spouses, if applicable. At the time of the hearing on the contempt motion, the plaintiffs' counsel indicated that four individuals had withdrawn from the case, leaving a total of twenty-eight plaintiffs.

[2] On December 16, 2020, the plaintiffs moved to strike a portion of the defendant's reply brief as a cross appellant. On April 21, 2021, we denied the plaintiff's motion without prejudice but permitted it to be raised at oral argument. The plaintiffs' counsel briefly addressed this motion at oral argument. In light of our resolution of the plaintiffs' appeal and the defendant's cross appeal, we conclude that no further action is required with respect to this motion.

[3] The plaintiffs' counsel acknowledged at oral argument that if we concluded that the trial court improperly had found a violation of the agreement, then the plaintiffs' contempt motion should have been denied.

[4] The original plaintiffs who filed the 1999 complaint were: Rudolph J. Fiorillo, Jr., Robert J. Arico, Michael Becker, Paul N. Brown, Pete J. Coffey, Earl M. Cowell, Brian V. Czarnota, Edward J. Delaney, Vincent R. Dicioccio, Frederick E. DiNardi, Jr., Stephen T. Donavan, Romeo H. Dube, Jr., Edward P. Garrahy, John A. Griffin, Dennis L. Haberman, Audabon Hill, Jr., Timothy F. Kelliher, Jr., Michael T. Kelly, Harry N. Kenney, John J. Kupstas, Thomas C. McMahon, Joseph A. Michaud, Donald Moreau, Wyatt Plona, Michael W. Raffalo, Donald R. Rapoza, F. Michael Sansom, Patrick C. Slattery, Robert J. Smith, Kevin S. Sullivan, Keith B. Victor, and Donald Weidt. At the October 22, 2018 hearing, the plaintiffs' counsel represented to the court that the 2003 settlement involved approximately eighty people.

[5] It is axiomatic that a collective bargaining agreement is a contract and its terms are interpreted by the principles of contract law. *Poole* v. *Waterbury*, 266 Conn. 68, 87–88, 831 A.2d 211 (2003); *D'Agostino* v. *Housing Authority*, 95 Conn. App. 834, 838, 898 A.2d 228, cert. denied, 280 Conn. 905, 907 A.2d 88 (2006).

[6] The defendant subsequently submitted a letter to the court indicating the defendant's corporation counsel had the authority to memorialize the written protocols and use them to resolve any disputes regarding the plaintiffs and their medical and prescription drug benefits, and did not require approval from any other entity of the defendant.

[7] In the event that the claim had been processed in accordance with the Cigna plan and the past practices of Anthem, the defendant's benefit coordinator was required to inform the member of the plaintiffs' group that the claim had been denied correctly or that the billing was, in fact, correct.

[8] The court subjected its conclusion to the following: "By May 21, 2019, the corporation counsel [shall] supply the court with a statement of authority to present the protocol as an amendment to the previously entered 2003 judgment in this case. This statement may also attach a revised protocol that removes or amends references to specific personnel or websites." The court further directed the parties to report the "continued status of the case" during the week of August 5, 2019.

[9] We are mindful that our Supreme Court has distinguished a stipulated judgment from a contract. "Although a stipulated judgment has attributes of a private contract that merely memorializes the bargained for position of the parties . . . [t]he terms of [a stipulated judgment or consent] decree, unlike those of a simple contract, have unique properties. A consent decree has attributes of both a contract and of a judicial act. . . . Accordingly, [o]nce approved, the prospective provisions of the consent decree operate as an injunction. . . . The injunctive quality of consent decrees compels the court to: [1] retain jurisdiction over the decree during the term of its existence . . . [2] protect the integrity of the decree with its contempt powers . . . and [3] modify the decree should changed circumstances subvert its intended purpose." (Citations omitted; emphasis omitted; internal quotation marks omitted.) *Lime Rock Park, LLC* v. *Planning & Zoning Commission*, 335 Conn. 606, 625, 264 A.3d 471 (2020). None of these distinguishing features applies in the present case.

[10] We also note that a determination of contempt requires, inter alia, an unambiguous court order. See *Bolat* v. *Bolat*, 191 Conn. App. 293, 297, 215 A.3d 736, cert. denied, 333 Conn. 918, 217 A.3d 634 (2019); see generally *Grogan* v. *Penza*, supra, 194 Conn. App. 98 (*Bright, J.*, concurring in part and dissenting in part) (ambiguous agreement would preclude finding of contempt). A conclusion of ambiguity with respect to the settlement agreement would place a substantial, and likely insurmountable, obstacle in the plaintiffs' way in their efforts to prevail on their contempt motion.